ONTWON SULLINS *v.* NEFTALI RODRIGUEZ ET AL.
(SC 17642)

Borden, Norcott, Katz, Palmer, Vertefeuille, Zarella and Sullivan, Js.

Argued October 27, 2006—officially released January 30, 2007

*Ann E. Lynch,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Henri Alexandre,* assistant attorney general, for the appellant (defendant Larry Myers).

*Joshua D. Lanning,* for the appellee (plaintiff).

*Antonio Ponvert III* filed a brief for Friends and Families Who Care as amicus curiae.

*Opinion*

BORDEN, J. The defendant Larry Myers,[1] the former warden of Northern correctional institution, appeals from the judgment of the trial court denying his motion to dismiss the complaint of the plaintiff, Ontwon Sullins, for lack of subject matter jurisdiction. The defendant contends that the trial court improperly concluded that the doctrine of sovereign immunity does not bar the

---

[1] The plaintiff brought this action against both Myers and the named defendant, Neftali Rodriguez, a correction officer at Northern correctional institution. Because Rodriguez did not appeal from the judgment of the trial court, we refer to Myers as the defendant in this opinion.

plaintiff's claims.[2] Specifically, the defendant argues that the trial court improperly: (1) applied federal, not state, sovereign immunity law; and (2) rejected the defendant's position that the state is the real party in interest, despite the plaintiff's allegations naming the defendant in his individual capacity. The plaintiff counters that: (1) state sovereign immunity law does not govern the court's inquiry when the vindication of a federal right is at issue; and (2) the facts alleged in his complaint are sufficient to defeat the defendant's sovereign immunity defense. We agree with the plaintiff and, accordingly, affirm the judgment of the trial court.

The plaintiff, a former inmate of Northern correctional institution, brought this action in two counts—the first count against the named defendant, Neftali Rodriguez, and the second count against the defendant. See footnote 1 of this opinion. The complaint stated that the defendant "is sued in his individual capacity." The plaintiff sought compensatory damages pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983.[3] In his

---

[2] "The general rule is that the denial of a motion to dismiss is an interlocutory ruling and, therefore, is not a final judgment for purposes of appeal. . . . The denial of a motion to dismiss based on a colorable claim of sovereign immunity, by contrast, is an immediately appealable final judgment because the order or action so concludes the rights of the parties that further proceedings cannot affect them." (Citation omitted; internal quotation marks omitted.) *Miller* v. *Egan*, 265 Conn. 301, 303 n.2, 828 A.2d 549 (2003).

[3] In its entirety, title 42 of the United States Code, § 1983, provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

answer, the defendant pleaded, as a special defense, that "[g]iven the facts and holding in *Miller* v. *Egan*, 265 Conn. 301, 308 [828 A.2d 549 (2003)], *Spring* v. *Constantino*, 168 Conn. 563, 568 [362 A.2d 871] (1975), and *Somers* v. *Hill*, 143 Conn. 476, 480 [123 A.2d 468] (1956), the facts as alleged by [the] plaintiff against [the] defendant . . . indicate that the state is the real defendant at issue in this case. . . . As this matter is against the defendant . . . in his official capacity, this action is barred by the doctrine of sovereign immunity."[4] The plaintiff then moved to strike the defendant's special defenses, and the defendant filed a motion to dismiss the plaintiff's complaint. The trial court denied the defendant's motion to dismiss and granted the plaintiff's motion to strike the defendant's special defense.[5] The defendant appealed to the Appellate Court and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

"A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo. . . . Moreover, [t]he doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss." (Internal quotation marks omitted.) *Cox* v. *Aiken*, 278 Conn. 204, 211, 897 A.2d 71 (2006). "As we

---

[4] The defendant and Rodriguez also claimed, as special defenses, sovereign immunity as to the claim against Rodriguez, and statutory immunity, qualified immunity and failure to exhaust state administrative remedies as to the claims against both the defendant and Rodriguez. The validity of these defenses is not before us in this appeal.

[5] The trial court also struck the special defense of sovereign immunity as to the claim against Rodriguez and the special defenses of statutory immunity and failure to exhaust administrative remedies as to the claims against both the defendant and Rodriguez. The court allowed the defendant and Rodriguez to claim the special defense of qualified immunity. None of these rulings is at issue in this appeal.

must in reviewing a motion to dismiss, we take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) *Miller* v. *Egan*, supra, 265 Conn. 305.

In his complaint, the plaintiff accused the defendant of violating the plaintiff's rights under the eighth[6] and fourteenth[7] amendments to the United States constitution, namely, the rights "to be free from cruel and unusual punishment and to be free from arbitrary and callous governmental behavior that shocks the conscience." In support, he alleged the following facts: On July 11, 2002, Rodriguez, a correction officer at Northern correctional institution, and his subordinates, placed the plaintiff in a small recreational chamber with another inmate, William McClease, and then left the area, "leaving [the] plaintiff and the other inmates without supervision. . . . Shortly thereafter, without provocation . . . McClease violently attacked [the] plaintiff, shattering his eye socket and causing him other serious physical injury, severe shock and mental anguish." The plaintiff further alleged that "[o]n many occasions prior to July 11, 2002, [the] plaintiff informed . . . Rodriguez in writing that . . . McClease had repeatedly threatened to harm [the] plaintiff." He also alleged that the plaintiff's injuries "were caused by the grossly negligent conduct and deliberate indifference of [the] defendant," namely, by his failure: (1) "to institute

---

[6] The eighth amendment to the United States constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

[7] The fourteenth amendment to the United States constitution, § 1, provides in relevant part: "No State shall . . . deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." Section 5 of the fourteenth amendment provides: "The Congress shall have power to enforce, by appropriate legislation, the provisions of this article."

adequate policies and procedures to protect inmates threatened by other inmates"; (2) "to train Northern [correction] officers to protect inmates threatened by other inmates"; and (3) "to institute adequate policies and procedures to enable inmates to protect themselves from other inmates posing a known risk." The complaint specifically names the defendant "in his individual capacity."

The defendant first claims that the trial court improperly concluded that federal sovereign immunity law, rather than state sovereign immunity law, applies to actions under § 1983.[8] We conclude, to the contrary, that when sovereign immunity is claimed as a defense to a cause of action pursuant to § 1983, federal sovereign immunity jurisprudence preempts analysis under state law.

The United States Supreme Court has asserted that "[f]ederal law is enforceable in state courts . . . because the Constitution and laws passed pursuant to it are as much laws in the States as laws passed by the state legislature." *Howlett* v. *Rose*, 496 U.S. 356, 367, 110 S. Ct. 2430, 110 L. Ed. 2d 332 (1990). State courts have concurrent jurisdiction over claims brought under § 1983. Id.; *Maine* v. *Thiboutot*, 448 U.S. 1, 10–11, 100 S. Ct. 2502, 65 L. Ed. 2d 555 (1980). Nevertheless, "[c]on-

---

[8] The defendant contends that the question of whether the plaintiff's claim is barred by sovereign immunity is properly answered by the four criteria this court set forth in *Spring* v. *Constantino*, supra, 168 Conn. 568, and later affirmed in *Miller* v. *Egan*, supra, 265 Conn. 308. In order "to determine whether an action is in effect, one against the state and cannot be maintained without its consent," this court considers whether: "(1) a state official has been sued; (2) the suit concerns some matter in which that official represents the state; (3) the state is the real party against whom relief is sought; and (4) the judgment, though nominally against the official, will operate to control the activities of the state or subject it to liability." (Internal quotation marks omitted.) *Miller* v. *Egan*, supra, 308. Because we conclude that federal law governs our inquiry, however, we need not decide whether the result in this case would be different under *Spring* and its progeny.

duct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 . . . cannot be immunized by state law. A construction of the federal statute which permitted a state immunity defense to have controlling effect would transmute a basic guarantee into an illusory promise; and the supremacy clause of the Constitution insures that the proper construction may be enforced." (Internal quotation marks omitted.) *Martinez* v. *California*, 444 U.S. 277, 284 n.8, 100 S. Ct. 553, 62 L. Ed. 2d 481 (1980). "The elements of, and the defenses to, a federal cause of action are defined by federal law." *Howlett* v. *Rose*, supra, 375.

We have embraced these principles in our decisions as well. As we said in *Lapinski* v. *Copacino*, 131 Conn. 119, 128, 38 A.2d 592 (1944), a federal statute, "though of federal origin, is just as much the law of this state as a statute enacted by our own legislature . . . ." In *Fetterman* v. *University of Connecticut*, 192 Conn. 539, 549, 473 A.2d 1176 (1984), for example, we concluded, pursuant to *Patsy* v. *Board of Regents of the State of Florida*, 457 U.S. 496, 102 S. Ct. 2557, 73 L. Ed. 2d 172 (1982), that the plaintiff was not required to exhaust administrative remedies with respect to her § 1983 claim. We refused to construe *Patsy* as limited to actions brought in federal court because "[t]he incongruous result . . . would be to allow plaintiffs instituting federal court actions to do so without exhausting state administrative remedies, while requiring plaintiffs suing in Connecticut courts to first exhaust such remedies. Since it is clear that claims for liability for deprivation of federal constitutional rights under § 1983 are claims as to which there is concurrent jurisdiction . . . we think that such a limitation on the court's holding is inappropriate." (Citations omitted.) *Fetterman* v. *University of Connecticut*, supra, 549. Although ultimately we employed state common-law sovereign immunity in *Fetterman*, we did so only after first con-

cluding that federal law permitted its application. Id., 551, citing *Owen* v. *Independence*, 445 U.S. 622, 100 S. Ct. 1398, 63 L. Ed. 2d 673, reh. denied, 446 U.S. 993, 100 S. Ct. 2979, 64 L. Ed. 2d 850 (1980), for the proposition that § 1983 incorporated common-law sovereign immunity, which was well established at the time of the statute's enactment.

In *Miller* v. *Egan*, supra, 265 Conn. 304–305, 310, we considered whether the defendants could employ a sovereign immunity defense to defeat several state law claims as well as one count brought under § 1983. As a threshold matter, we examined the complaint to determine whether the plaintiff had brought the action against the individually named defendants in their individual capacities as well as in their official capacities. Id., 307–308. Although the inquiry was relevant to both federal and state sovereign immunity analyses; see, e.g., *Hafer* v. *Melo*, 502 U.S. 21, 30–31, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991); *Martin* v. *Brady*, 261 Conn. 372, 374, 802 A.2d 814 (2002); we dealt with the § 1983 claim separately and concluded, pursuant to *Howlett* v. *Rose*, supra, 496 U.S. 365, and *Will* v. *Michigan Dept. of State Police*, 491 U.S. 58, 70–71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989), that "[a]lthough it would have made sense . . . for the plaintiff to have sued the defendants only in their individual capacities in [the § 1983 count] . . . he did not do so."[9] *Miller* v. *Egan*, supra, 311.

[9] We recognize that the structure of our analysis in *Miller* appeared to place our inquiry under federal law within the context of the third prong of the test in *Spring* v. *Constantino*, supra, 168 Conn. 568; see footnote 8 of this opinion; namely, whether "the state is the real party against whom relief is sought . . . ." *Miller* v. *Egan*, supra, 265 Conn. 308; id., 308–11 (concluding that "the third criterion of *Spring* is met on all counts of the complaint," which would, by definition, include the count brought pursuant to § 1983). Although, in hindsight, our approach was not the most analytically accurate, it was borne of convenience and has no substantive import, especially when there was no conflict between the state and federal law on point. It does not, and it could not, change the fact that *Howlett* v. *Rose*, supra, 496 U.S. 356, and *Will* v. *Michigan Dept. of State Police*, supra, 491 U.S. 58, rather than *Spring*, controlled the outcome of the federal claim.

In ruling on a defendant's claim of qualified immunity from a § 1983 claim in *Schnabel* v. *Tyler*, 230 Conn. 735, 742–43, 646 A.2d 152 (1994), we said that such a claim "raises a question of federal law . . . and not state law. Therefore, in reviewing these claims of qualified immunity we are bound by federal precedent, and may not expand or contract the contours of the immunity available to government officials." (Citation omitted; internal quotation marks omitted.) We added that, "[i]t would be a bizarre result," if this court allowed individual state defendants to assert immunity from federal constitutional claims "when in another courthouse, a few blocks away, the federal court, being bound by the Second Circuit," would not. Id., 743 n.4; see also *Szewczyk* v. *Dept. of Social Services*, 275 Conn. 464, 475 n.11, 881 A.2d 259 (2005); *Turner* v. *Frowein*, 253 Conn. 312, 341, 752 A.2d 955 (2000).

Thus, we conclude that, although the test set forth in *Spring* and *Miller* is an appropriate mechanism for our state courts to determine the capacity in which the named defendants are sued in actions asserting violations of state law, to employ that test to divest state courts of jurisdiction to hear otherwise cognizable § 1983 claims would be to erect a constitutionally impermissible barrier to the vindication of federal rights. See *Howlett* v. *Rose*, supra, 496 U.S. 375. We find no merit in the defendant's contention that the result of our conclusion is to preclude the defense of sovereign immunity in every action under § 1983. Sovereign immunity may bar a plaintiff's claim pursuant to § 1983, but the trial court concluded, and we agree, that federal law must govern that inquiry.

Moreover, we disagree with the defendant's argument that, in *Alden* v. *Maine*, 527 U.S. 706, 119 S. Ct. 2240, 144 L. Ed. 2d 636 (1999), the United States Supreme Court rejected the limitation of state sovereign immunity analysis to state law claims. In *Alden*, a group

of probation officers brought an action in state court against their employer, the state of Maine, alleging that the state had violated the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., which purportedly authorized private actions against states in state court without regard to consent. Id., 711–12. The petitioners originally brought the action in federal court, which dismissed the action on the ground that Congress could not use its powers under article one of the United States constitution to abrogate a state's sovereign immunity in federal court. The petitioners then brought an action in state court, which also dismissed the action on sovereign immunity grounds. Id., 712. The United States Supreme Court, in determining "whether Congress has the power, under Article I, to subject nonconsenting States to private suits in their own courts"; id., 713; considered at length the relationship between the eleventh amendment to the United States constitution and state sovereign immunity.[10] Id., 712–30. The court concluded that "the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment." Id., 713. Thus, "save where there has been a surrender of [sovereign] immunity [in the constitution]"; (internal quotation marks omitted) id., 730; Congress may not, "[i]n exercising its Article I powers . . . subject the States to private suits in their own courts . . . ." Id., 730–31.

Contrary to the defendant's contention, the court, in *Alden*, did not sanction the application of state law to

[10] On its face, the eleventh amendment to the United States constitution applies only to actions in federal court. The eleventh amendment of the United States constitution provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

govern the inquiry.[11] See id., 711–60. Moreover, we do not read the court's decision to implicate its jurisprudence regarding whether Congress intended to abrogate sovereign immunity when it is otherwise empowered to do so, as it was in enacting § 1983. See *Quern* v. *Jordan,* 440 U.S. 332, 341, 99 S. Ct. 1139, 59 L. Ed. 2d 358 (1979); *Fitzpatrick* v. *Bitzer,* 427 U.S. 445, 456, 96 S. Ct. 2666, 49 L. Ed. 2d 614 (1976). In *Alden,* as in *Howlett* v. *Rose,* supra, 496 U.S. 356, the court simply introduced uniformity in the state and federal courts as to the availability of a sovereign immunity defense. In *Howlett,* the court held that a sovereign immunity defense that was not available in federal court could not be employed in state court. Id., 383. In *Alden,* the court achieved uniformity in the other direction, by making available in a state forum a sovereign immunity defense that was already available in federal court. See *Alden* v. *Maine,* supra, 527 U.S. 711–12.

In concluding that Congress did not intend § 1983 to abrogate sovereign immunity; *Quern* v. *Jordan,* supra, 440 U.S. 341; and that Congress may never use its article one powers to do so; *Alden* v. *Maine,* supra, 527 U.S. 754; the Supreme Court refined the federal doctrine that "sovereign immunity [is] a constitutional principle" and that "immunity from suit is demarcated . . . by fundamental postulates implicit in the constitutional design." Id., 729. The court made no suggestion, however, that state law should define the doctrine's boundaries.

Having determined that federal law governs the defendant's sovereign immunity defense, we now turn to the defendant's second claim, namely, that the facts alleged in the plaintiff's complaint are insufficient to

---

[11] We note, in passing, that the United States Supreme Court cited cases of the Supreme Court of Maine as authority only in support of the proposition that the state had not waived the defense of sovereign immunity. *Alden* v. *Maine,* supra, 527 U.S. 757–58.

defeat that defense. We conclude that, under federal law, the doctrine of sovereign immunity does not bar the plaintiff's claim.

Despite the narrow, jurisdictional language of the eleventh amendment; see footnote 10 of this opinion; the United States Supreme Court has interpreted it to embody greater principles of sovereign immunity and to preclude actions against nonconsenting states. See *Idaho* v. *Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267–68, 117 S. Ct. 2028, 138 L. Ed. 2d 438 (1997); *Hans* v. *Louisiana*, 134 U.S. 1, 16–21, 10 S. Ct. 504, 33 L. Ed. 842 (1890). Moreover, the court has held that the principles of sovereign immunity embodied in the eleventh amendment apply with equal force in both federal and state courts, concluding that "the States retain immunity from private suit in their own courts, an immunity beyond the congressional power to abrogate by Article I legislation." *Alden* v. *Maine*, supra, 527 U.S. 754.

Congress, however, did not pass § 1983 pursuant to its article one power. It was, instead, "one of the means whereby Congress exercised the power vested in it by § 5 of the Fourteenth Amendment to enforce the provisions of that Amendment."[12] *Monroe* v. *Pape*, 365 U.S. 167, 171, 81 S. Ct. 473, 5 L. Ed. 2d 492 (1961). Section 5 empowers Congress to abrogate state sovereign immunity. According to the Supreme Court, "[w]hen Congress acts pursuant to § 5, not only is it exercising legislative authority that is plenary within the terms of the constitutional grant, it is exercising that authority under one section of a constitutional Amendment whose other sections by their own terms embody limitations on state authority. *We think that Congress may, in determining what is 'appropriate legislation' for the purpose of enforcing the provisions*

---

[12] See footnote 7 of this opinion.

*of the Fourteenth Amendment, provide for private suits against States or state officials which are constitutionally impermissible in other contexts."* (Emphasis added.) *Fitzpatrick* v. *Bitzer*, supra, 427 U.S. 456.

Nevertheless, the Supreme Court has taken the view that Congress did not intend to defeat traditional notions of sovereign immunity in enacting § 1983. *Quern* v. *Jordan*, supra, 440 U.S. 341. Instead, these principles inform the meaning of the term "person" as used in § 1983.[13] See, e.g., *Will* v. *Michigan Dept. of State Police*, supra, 491 U.S. 71 ("neither a State nor its officials acting in their official capacities are 'persons' under § 1983"). Importantly, however, the court later clarified that § 1983 does authorize actions against state officers for damages *arising from official acts*, if they are *sued in their individual capacities. Hafer* v. *Melo*, supra, 502 U.S. 23.

In *Hafer*, former Pennsylvania state employees brought a § 1983 claim against the state auditor general for allegedly dismissing the employees because of their political affiliations. Id. The auditor general argued that the claims were barred because she had made the employment decisions in her official capacity. Id. The United States Supreme Court allowed the action. Id., 31. "Personal-capacity suits . . . seek to impose individual liability upon a government officer for actions taken under color of state law. Thus, [o]n the merits, to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." (Emphasis in original; internal quotation marks omitted.) Id., 25. In other words, the requirement of action under color of state law means that a § 1983 defendant's liability is derived from his authority as an official. See id., 27–28. Thus, "the phrase 'acting in their official

---

[13] See footnote 3 of this opinion.

capacities,' " the court said, *"is best understood as a reference to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury."* (Emphasis added.) Id., 26.

Put another way, state officials sued for money damages in their official capacities are not "persons" within the meaning of § 1983 because the action against them is one against the office and, thus, no different from an action against the state itself. See *Will* v. *Michigan Dept. of State Police*, supra, 491 U.S. 71. State officials are, however, "persons" within the meaning of § 1983 and may be held personally liable when sued as individuals for actions taken in their official capacities and, thus, under color of law. See *Hafer* v. *Melo*, supra, 502 U.S. 27.

In this case, the plaintiff's complaint is unambiguous. It states that the defendant "is sued in his individual capacity." Such an articulation of the defendant's capacity is sufficient to commence a § 1983 claim against a state officer in his individual capacity. See id., 24; *Yorktown Medical Laboratory, Inc.* v. *Perales*, 948 F.2d 84, 88–89 (2d Cir. 1991). We therefore conclude that the plaintiff's action is against the defendant in his individual capacity, and that the doctrine of sovereign immunity does not bar the plaintiff's claim.

Relying on the Supreme Court's statement that "[t]he real interests served by the Eleventh Amendment are not to be sacrificed to elementary mechanics of captions and pleading"; *Idaho* v. *Coeur d'Alene Tribe of Idaho*, supra, 521 U.S. 270; see also *In re Ayers*, 123 U.S. 443, 487, 8 S. Ct. 164, 31 L. Ed. 216 (1887) (" 'the question whether a suit is within the prohibition of the [Eleventh] Amendment is not always determined by reference to the nominal parties on the record' "); the defendant argues that the Supreme Court has invalidated the supposition gleaned from *Hafer* that, in a

§ 1983 action, a plaintiff, to survive a motion to dismiss on the defense of sovereign immunity, need only allege in his complaint that he is suing the defendant in the defendant's individual capacity. We disagree.

In *Idaho* v. *Coeur d'Alene Tribe of Idaho*, supra, 521 U.S. 264–65, a federally recognized tribe named the state of Idaho, various state agencies, and state officials in their individual capacities in an action seeking to establish the tribe's entitlement to the banks, beds and submerged lands of Lake Coeur d'Alene. The case did not involve a § 1983 claim for damages against an individual defendant. Rather, the court considered whether the tribe's claim fell within the general rule established in *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908), that permitted "certain suits seeking declaratory and injunctive relief against state officers in their individual capacities."[14] *Idaho* v. *Coeur d'Alene Tribe of Idaho*, supra, 269. The court concluded that *Ex parte Young* did not apply because the declaratory and injunctive relief the tribe sought was the functional equivalent of a quiet title action, "in that substantially all benefits of ownership and control would shift from the State to the Tribe." Id., 282. The relief sought, namely, "a determination that the lands in question are not even within the regulatory jurisdiction of the State"; id.; was unique and extraordinary, and it could come only from the state. Because "[t]he suit would diminish, even extinguish, the State's control over a vast reach of lands and waters long deemed by the State to be an integral part of its territory"; id.; the court concluded that Ida-

---

[14] In *Ex parte Young*, supra, 209 U.S. 159–60, the court explained: "If the act which the state Attorney General seeks to enforce be a violation of the Federal Constitution, the officer in proceeding under such enactment comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States."

ho's "sovereign interest . . . would be affected in a degree fully as intrusive as almost any conceivable retroactive levy upon funds in its Treasury."[15] Id., 287.

We understand *Idaho* v. *Coeur d'Alene Tribe of Idaho*, supra, 521 U.S. 261, to stand for the narrow proposition that, when a plaintiff seeks relief that *only* the state can provide, he or she may not overcome sovereign immunity simply by suing an individual actor. We find support for our approach in *Luder* v. *Endicott*, 253 F.3d 1020 (7th Cir. 2001), a case on which the defendant also relies. Although that case, like this one, involved a claim for damages, it was brought under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., not § 1983. Id., 1021. Specifically, prison employees sought damages from the warden and other state officers in their individual capacities for work the employees had been ordered to perform before and after their official shifts. Id., 1022. The United States Court of Appeals for the Seventh Circuit acknowledged that "[t]he general rule is that such suits are not barred . . . because the plaintiff is seeking damages from individuals rather than from the state treasury." Id., 1022–1023. The court concluded, however, that the plaintiffs were really "seeking to accomplish *exactly* what they would accomplish were they allowed to maintain th[e] suit against the

---

[15] In *Edelman* v. *Jordan*, 415 U.S. 651, 663–65, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974), the court, limiting *Ex parte Young*, held that the eleventh amendment bars actions by private parties seeking to impose a liability, however articulated, that *must* be paid from the state treasury. In that case, the Supreme Court reversed the judgment of the district court, which had ordered state officials to release withheld benefits that were administered in a manner inconsistent with federal regulations. Id., 653, 678. The court further refined this principle when it stated that "[t]he general rule is that a suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." (Internal quotation marks omitted.) *Pennhurst State School & Hospital* v. *Halderman*, 465 U.S. 89, 101 n.11, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984).

state . . . to force the state to accede to their view of the [Fair Labor Standards] Act and to *pay* them accordingly." (Emphasis altered.) Id., 1024. In other words, the relief sought, namely back pay, was relief that *only* the state could provide.[16]

Other than an agreement by the state to indemnify the defendant, which is irrelevant; see footnote 16 of

[16] Importantly, the Seventh Circuit noted that the "fact that the state chooses to indemnify its employees who are sued in federal court is irrelevant," and "likewise irrelevant is the fact that any exposure of state employees to suit in federal court will . . . compel the state by reason of competition in the labor market to pay its employees more than if they had a blanket immunity from such suits." *Luder* v. *Endicott*, supra, 253 F.3d 1023. "It is," the court stated, "also irrelevant that the judgment may exceed the employee-defendant's capacity to pay unless he is indemnified . . . ." Id. In other words, as the United States Supreme Court suggested in *Port Authority Trans-Hudson Corp.* v. *Feeney*, 495 U.S. 299, 110 S. Ct. 1868, 109 L. Ed. 2d 264 (1990), the state's mere exposure to liability does not alone invoke sovereign immunity. In that case, the court noted that it "has not decided which arrangements between a State and a nominal defendant are sufficient to establish that the State is the real party in interest for Eleventh Amendment purposes. . . . Lower courts have uniformly held that States may not cloak their officers with a personal Eleventh Amendment defense by promising, by statute, to indemnify them for damages awards imposed on them for actions taken in the course of their employment. See, e.g., *Blaylock* v. *Schwinden*, 862 F.2d 1352, 1354, n.1 ([9th Cir.] 1988) (The eleventh amendment prohibits a district court from ordering payment of a judgment from the state treasury. The court may properly order the officials to pay damages under § 1983, but if the officials desire indemnification under the state statute, they must bring their own action in state court); *Duckworth* v. *Franzen*, 780 F.2d 645, 650–651 ([7th Cir.] 1985) ([T]he purpose of the Eleventh Amendment is only to protect the state against involuntary liability. If the State chooses to pick up the tab for its errant officers, its liability for their torts is voluntary. . . . Moreover, it would be absurd if all a state had to do to put its employees beyond the reach of [§] 1983 and thereby make the statute ineffectual except against employees of local governments . . . was to promise to indemnify state employees for any damages awarded in such a suit); *Wilson* v. *Beebe*, 770 F.2d 578, 588 ([6th Cir.] 1985) (State cannot clothe [state officer] with [Eleventh Amendment] immunity by voluntarily agreeing to pay any judgment rendered against him)." (Internal quotation marks omitted.) *Port Authority Trans-Hudson Corp.* v. *Feeney*, supra, 317–18 n.10; see also *Regents of the University of California* v. *Doe*, 519 U.S. 425, 431, 117 S. Ct. 900, 137 L. Ed. 2d 55 (1997) ("it is the entity's potential legal liability, rather than its ability or inability

this opinion; the defendant offers no reason why the relief sought by the plaintiff could not come exclusively from the defendant. Therefore, the present case implicates none of the concerns articulated in *Idaho* or *Luder*.

The defendant further argues that the phrase " 'sued in his individual capacity' " does not have "talismanic characteristics," and that the trial court improperly failed to analyze the plaintiff's complaint to determine if, in fact, the state was the real party in interest. Specifically, the defendant insists that the plaintiff has failed to allege facts "to support the conclusion that the employee's actions were not within his statutory power, or though within his statutory power, the exercise of the employee's powers were constitutionally void." In essence, the defendant argues that the plaintiff's action involves behavior that was beyond the defendant's control and within the exclusive purview of the state—namely, implementing policies, training and procedures—and that, therefore, the state is the real party in interest. We disagree.

In support of his argument, the defendant relies on *Larson* v. *Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 69 S. Ct. 1457, 93 L. Ed. 1628 (1949), in which the United States Supreme Court stated: "[T]he action of an officer of the sovereign (be it holding, taking or otherwise legally affecting the plaintiff's property) can be regarded as so 'illegal' as to permit a suit for a specific relief against the officer as an individual only if it is not within the officer's statutory powers or, if within those powers, only if the powers, or their exercise in the particular case, are constitutionally void." Id., 701–702. Because it is limited to actions for specific relief, however, that case is inapposite to the present case. Id. In

to require a third party to reimburse it, or to discharge the liability in the first instance, that is relevant").

fact, the court stated, that "[t]here is . . . no jurisdictional difficulty" in a suit against the officer to recover *damages* for the agent's personal actions. Id., 687. "The question becomes difficult . . . when the suit is not one for damages . . . ." Id., 687–88. The case before us involves a claim for damages. Moreover, the plaintiff in *Larson* did not allege that the defendant had acted unconstitutionally, but rather that a government officer, acting within his authority, had committed a tort. Id., 691–92. In the case before us, the plaintiff brought a cause of action pursuant to § 1983,[17] which by its very terms requires the deprivation of a constitutional right.[18]

Indeed, in *Larson* v. *Domestic & Foreign Commerce Corp.*, supra, 337 U.S. 692–93, the Supreme Court stated that the plaintiff had "confuse[d] the doctrine of sovereign immunity with the requirement that a plaintiff state a cause of action." In that case, the plaintiff thought that he had defeated sovereign immunity merely by stating a claim that an agent had acted wrongfully. See id. In the case before us, we believe it is the defendant who confuses the two, apparently assuming that the plaintiff's alleged failure to state a claim concomitantly would impose sovereign immunity as a bar to that claim. These are, however, separate and distinct claims. The defendant has not filed a motion to strike or otherwise challenged the sufficiency of the complaint. Accord-

---

[17] See footnote 3 of this opinion.

[18] Without intimating any view on the merits of the plaintiff's case, we note that the defendant, quoting *Colon* v. *Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995), admits that a supervisory defendant may be determined to be personally involved in a constitutional violation by showing that he " 'created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom.' " The defendant further acknowledges that his asserted sovereign immunity defense is inapplicable in cases where a state official acted "outside the scope of his authority and/ or abused his position." A constitutional violation is, by definition, an act outside the scope of the defendant's authority and an abuse of his position. That is, as we understand it, the basis for liability as pleaded in the complaint.

ingly, this argument is best saved for the merits of the plaintiff's case.

We are also unpersuaded by the defendant's argument that the plaintiff failed to satisfy the pleading requirements of this state. We agree that state procedural requirements, of which fact pleading is one; see Practice Book § 10-1; generally apply to § 1983 claims brought in state court. *Felder* v. *Casey*, 487 U.S. 131, 138, 108 S. Ct. 2302, 101 L. Ed. 2d 123 (1988) ("[n]o one disputes the general and unassailable proposition . . . that States may establish the rules of procedure governing litigation in their own courts"). Because, however, the only issue before us is whether, regardless of its strength, the plaintiff's claim is barred by the doctrine of sovereign immunity, we are not persuaded by the defendant's assertion that the "[p]laintiff's conclusory allegation concerning inadequate training is not a 'fact' sufficient to establish an individual liability against [the defendant]." Whether the pleaded facts are sufficient to establish liability does not bear upon our analysis of whether, under federal substantive law, the defendant has been sued in his individual capacity.

The judgment is affirmed.

In this opinion the other justices concurred.