******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

IAN WRIGHT *v.* JAMES DZURENDA ET AL.
(AC 43888)

Prescott, Suarez and Vertefeuille, Js.

*Syllabus*

The plaintiff, an incarcerated individual, sought a declaratory judgment and punitive damages against the defendant B, an employee of the Department of Correction, claiming that B had retaliated against him for filing a grievance against her for allegedly denying him access to type legal documents on the facility's typewriter, which he claimed was a denial of access to the courts in violation of the federal constitution. In B's answer, she asserted the special defense of failure to exhaust administrative remedies, pursuant to federal statute (§ 42 U.S.C. § 1997e (a)). At B's request, the trial court held an evidentiary hearing, prior to the start of trial, regarding B's defense of failure to exhaust. The trial court granted B's motion to dismiss, concluding that because the plaintiff had failed to exhaust his administrative remedies under the department's grievance system, it lacked subject matter jurisdiction pursuant to § 42 U.S.C. § 1997e (a). On the plaintiff's appeal to this court, *held*:

1. This court declined to review the plaintiff's unpreserved claim that the trial court erred in determining that he had failed to exhaust his administrative remedies by not filing a second grievance regarding B's alleged retaliatory conduct pursuant to the department's grievance procedure, as this claim was not raised before the trial court: moreover, this court declined the plaintiff's request to review his unpreserved claim under the plain error doctrine, as the plaintiff failed to demonstrate that there was an error so clear and obvious as to warrant the extraordinary remedy of reversal, and beyond the plaintiff's unsupported assertions that the circumstances of his case were extraordinary because the trial court and B overlooked controlling case law, the plaintiff provided little to no analysis of this unpreserved claim under the plain error doctrine.

2. The plaintiff could not prevail on his claim that the trial court erred in considering B's special defense that the plaintiff had failed to exhaust his administrative remedies because B had waived that special defense by failing to raise it in her pretrial motions to dismiss and her motion for a summary judgment; contrary to the plaintiff's claim, B, under the relevant rule of practice (§ 10-60) was not required to raise her special defenses in her pretrial motions to dismiss, and, because exhaustion under § 42 U.S.C. § 1997e (a) was an affirmative defense, the plaintiff was not required to factually plead in his complaint that he had exhausted his administrative remedies, and, thus, it was not until the plaintiff provided B with a list of the exhibits three days before trial was it confirmed that the plaintiff had not exhausted his administrative remedies for his retaliation claim.

Argued April 14—officially released September 7, 2021

*Procedural History*

Action, inter alia, seeking a judgment declaring that denying access to a typewriter to an incarcerated individual constitutes a denial of access to the courts, and for other relief, brought to the Superior Court in the judicial district of Danbury, where the trial court, *Brazzel-Massaro, J.*, granted the motion to dismiss count four of the complaint filed by the defendant Bonnie Hakins and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed.*

*Ian Wright*, self-represented, the appellant (plaintiff).

*Thomas J. Davis, Jr.*, assistant attorney general, with whom, on the brief, was *William Tong*, attorney gen-

eral, for the appellee (defendant Bonnie Hakins).

*Opinion*

VERTEFEUILLE, J. The self-represented plaintiff,[1] Ian Wright, appeals from the judgment of the trial court, dismissing count four of his complaint, brought against the defendant Bonnie Hakins, a counselor for the Department of Correction (department), in her individual capacity, on the ground that the plaintiff's action is barred for failure to exhaust his administrative remedies.[2] On appeal, the plaintiff claims that the court erred (1) in determining that he had failed to exhaust his administrative remedies and (2) in considering the defendant's special defense that the plaintiff had failed to exhaust his administrative remedies because the defendant had waived that special defense. We disagree and, accordingly, affirm the judgment of the court.

The following procedural history and facts, as found by the court or as undisputed in the record, are relevant to this appeal. The self-represented plaintiff was transferred to Garner Correctional Institution (Garner) from Corrigan Radowski Correctional Center on April 22, 2014. On April 30, 2014, the plaintiff submitted form CN 9601, an inmate request form (informal form), to a prison official at Garner, indicating that he had a grievance against the defendant for her alleged refusal to allow him access to a typewriter so that he could prepare legal documents to file with this court. The plaintiff included a subject line titled, "Re Grievance Denial Access to typewriter," on the informal form. On that form, the plaintiff stated that the grievance was being filed against the defendant, who had denied him "access to [the] typewriter, which [was] necessary to prepare legal pleadings to be filed with the [Connecticut] Appellate and federal courts." The plaintiff also claimed that the denial of access to the typewriter amounted to a denial of access to the court in violation of his first amendment rights under the federal constitution.

A prison official responded to the plaintiff's informal form and stated that the defendant was following Garner's policy and that the plaintiff was given access to the typewriter on May 5, 2014. Thereafter, on May 13, 2014, the plaintiff submitted form CN 9602, an inmate administrative remedy form (level one grievance form), setting forth a grievance against the defendant due to the defendant's alleged refusal to allow him access to a typewriter. Specifically, the plaintiff indicated that the grievance was being filed "for failure of the counselor . . . and the staff of the [d]epartment . . . to provide [him] with adequate use of a typewriter necessary to prepare legal document[s] to be filed with the court, which constitutes 'denial of access to the courts' in violation of the first amendment to the constitution of the United States." The plaintiff also claimed that he was subjected to an unreasonable search. The relief that the plaintiff requested to resolve his grievance entailed him being given access to the typewriter five

days per week for one hour each day. His request was denied on June 11, 2014. The denial notice stated that, because Garner had only one typewriter that was afforded for use at Garner, the plaintiff should seek an extension with the courts so that he could timely submit his legal documents. The denial notice also advised the plaintiff that he could appeal the denial.

On June 13, 2014, the plaintiff submitted form CN 9604, an inmate grievance appeal form (level two grievance form), appealing the denial of his level one grievance regarding access to the typewriter, claiming that his grievance was improperly denied because he was unable to get access to the typewriter from the defendant after submitting numerous requests. His level two appeal was denied on July 1, 2014, and the denial notice stated that his claim was denied because his allegations could not be substantiated.

On June 10, 2014, the plaintiff submitted a second informal form with a subject line titled, "Re: Access to the typewriter and unreasonable strip search 'Grievance.' " On that informal form, the plaintiff stated that it was his "second grievance with respect to not getting access to the typewriter." The plaintiff also claimed that he believed "[t]he actions of [the defendant] [were] in retaliation for [his] first grievance [that he] filed against her." Garner responded by indicating that the issue raised by the defendant already had been addressed and that he was not being denied access because he had used the typewriter on several occasions and even chose to use his recreational time to exercise in lieu of using the typewriter when he was given the opportunity to use it. He did not further pursue, administratively, his claim of retaliation.

The plaintiff thereafter commenced this action in the Superior Court on October 3, 2014. The five count complaint alleged violations of 42 U.S.C. § 1983 (2012). The fourth count of the complaint, the relevant count for purposes of the plaintiff's claims raised on appeal, alleged that the defendant retaliated against the plaintiff for filing a grievance against her by denying him access to the typewriter.[3] The plaintiff sought, inter alia, a declaratory judgment from the court "stating that . . . the denial of a typewriter . . . constituted denial of 'access to the court,' " and punitive damages.

On March 24, 2015, the defendants filed a motion to dismiss all counts of the plaintiff's complaint, contending that the court lacked subject matter jurisdiction, to which the plaintiff filed an objection on April 23, 2015. On August 31, 2016, the court, *Ozalis, J.*, dismissed the plaintiff's access to the court claims under counts one, two, and three for lack of standing because the plaintiff failed to show that he suffered an actual injury. On October 16, 2018, the defendants filed a second motion to dismiss, seeking dismissal of the plaintiff's claims for declaratory and injunctive relief

and count five of the complaint. On February 4, 2019, the court, *Krumeich, J.*, granted the defendants' motion and dismissed count five, as well as the plaintiff's claims for injunctive and declaratory relief, after determining that, because the plaintiff no longer was incarcerated at Garner, it lacked subject matter jurisdiction to afford the plaintiff the injunctive and declaratory relief requested. Moreover, the court determined that the plaintiff's claims under count five of the complaint became moot after he no longer was incarcerated at Garner.

On April 15, 2019, the defendant filed a motion for summary judgment as to count four, which was denied by the court, *Brazzel-Massaro, J.*, on November 20, 2019. On October 28, 2019, the defendant filed her answer to the plaintiff's complaint in which she denied the plaintiff's allegations in count four. She also raised two special defenses, claiming that she was entitled to qualified immunity for the allegations asserted under count four and that the plaintiff's action was barred by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e (a) (2018),[4] because the plaintiff had failed to exhaust available administrative remedies before commencing this action in the Superior Court. On December 10, 2019, the plaintiff and the defendant exchanged their respective trial exhibits and the plaintiff also filed his list of trial exhibits with the court. On December 12, 2019, the eve of trial, the defendant filed a request to amend her answer and special defenses solely to address typographical and grammatical errors, and not to make any substantive changes. The request to amend was granted by the court on December 13, 2019. The defendant also had filed a motion for order on December 12, 2019, seeking a pretrial evidentiary hearing to determine whether the plaintiff had exhausted his administrative remedies before initiating this action. The court granted the defendant's motion after stating its concerns about the defendant's request to have the hearing on the morning of the first day of trial, December 13, 2019. The defendant indicated that, until the plaintiff had provided her with his trial exhibits on December 10, 2019, it was not clear to her that the plaintiff had failed to exhaust his administrative remedies. Notwithstanding the court's concerns about the timing of the defendant's motion, the evidentiary hearing was held that morning.

The defendant's only witness during the evidentiary hearing was Jason Olson, a correction counselor at Garner, who, at the time, was assigned as the primary administrative remedies coordinator. Olson testified that he maintained the records of grievances filed by inmates at Garner. He also explained that the inmate grievance procedure at Garner was governed by the department's administrative directive 9.6 (administrative directive). See Conn. Dept. of Correction, Administrative Directive 9.6 (effective August 15, 2013).[5] Olson's

testimony established that the proper procedure for an inmate to file a grievance, pursuant to the administrative directive, required the inmate first to go through an informal resolution process, which required the inmate to submit an informal form. If the informal process did not address the inmate's concerns, the inmate could then file a grievance by means of a level one grievance form. If the inmate's level one grievance was denied, the inmate could thereafter seek a review by filing a level two grievance form, which is when the inmate is considered to have exhausted the administrative remedy process. Notably, Olson testified that the plaintiff exhausted his administrative remedies as it pertained to the grievance he filed on May 13, 2019, concerning access to the courts and unreasonable search claims because the plaintiff submitted an informal form, a level one grievance form, and a level two grievance form for these claims.[6] Olson also testified that the plaintiff never filed a level one grievance form after filing a second informal form on June 10, 2014, alleging retaliation.

The plaintiff did not proffer any witnesses and claimed that he did not have sufficient notice of the defendant's exhaustion claim to adequately respond to the claim. Moreover, the plaintiff asserted that the filing of the second informal form on June 10, 2014, constituted the filing of a grievance and was sufficient because the informal process was a part of the inmate grievance procedure set forth in the administrative directive. In response, the defendant argued that the plaintiff had enough time to prepare because her special defense of failure to exhaust administrative remedies was included in her answer that was filed on October 28, 2019. Consequently, the defendant moved for a dismissal during the evidentiary hearing, which the court granted, dismissing count four of the complaint after concluding that the plaintiff failed to exhaust his administrative remedies by failing to file a level one grievance form concerning the retaliation allegation. In particular, the court found that the evidence supported the finding that the plaintiff did not file a level one grievance form against the defendant alleging retaliation, nor was there a second level grievance filed as required by the administrative directive. Further, the court noted that, because the plaintiff was familiar with the process required for filing a grievance pursuant to the administrative directive, the fact that he was a self-represented party did not cause him hardship. This appeal followed.[7] Additional facts will be set forth as necessary.

I

On appeal, the plaintiff first claims that the court erred by determining that he had failed to exhaust his administrative remedies. Specifically, the plaintiff contends that the court's determination that he failed to exhaust his administrative remedies prior to initiating

this action was improper because he sufficiently had described the defendant's retaliatory conduct in the first grievance that he had filed on May 13, 2014, and that he was not required to file a second grievance alleging retaliation because it would have been considered an abuse of the inmate grievance procedure.[8] We decline to review this claim for the reasons that follow.[9]

The inmate grievance procedure set forth in administrative directive 9.6 § (6) provides in relevant part: "(A) An inmate must attempt to seek informal resolution prior to filing an inmate grievance. The inmate may attempt to resolve the issue verbally with the appropriate staff member or with a supervisor/manager. If the verbal option does not resolve the issue, the inmate *shall* submit a written request via CN 9601, Inmate Request Form. . . .

"(C) An inmate may file a grievance [via CN 9602] if the inmate is not satisfied with the informal resolution offered. . . .

"(K) An inmate may appeal a Level 1 disposition to Level 2 within (5) calendar days of receipt of the decision. . . . Level 2 shall be the final level of appeal for all grievances except as provided in . . . (L)."[10] (Emphasis added.)

During the evidentiary hearing on December 13, 2019, the plaintiff fervently argued that the filing of the June 10, 2014 informal form against the defendant alleging retaliation was sufficient because "the grievance is deemed filed" once he starts the grievance process. More particularly, he argued that because the first step in the inmate grievance procedure under the administrative directive is an informal resolution, he, in fact, had filed a grievance regarding his retaliation claim upon the submission of his June 10 informal form.

The crux of the plaintiff's retaliation claim on appeal is that the May 13, 2014 grievance that he filed was sufficient to alert prison officials of the defendant's alleged retaliatory conduct and that he was not required to file a second grievance regarding the defendant's conduct because doing so would have been an abuse of the inmate grievance procedure pursuant to § (6) (O) (3) of administrative directive 9.6. This argument was not raised before the trial court, and, therefore, we decline to review it for the first time on appeal.

"[I]t is the appellant's responsibility to present a claim clearly to the trial court so that the trial court may consider it and, if it is meritorious, take appropriate action. That is the basis for the requirement that ordinarily [the appellant] must raise in the trial court the issues that he intends to raise on appeal. . . . For us [t]o review [a] claim, which has been articulated for the first time on appeal and not before the trial court, would result in a trial by ambuscade of the trial judge." (Internal quotation marks omitted.) *Dinardo Seaside*

*Tower, Ltd.* v. *Sikorsky Aircraft Corp.*, 153 Conn. App. 10, 28, 100 A.3d 413, cert. denied, 314 Conn. 947, 103 A.3d 976 (2014). Thus, because the record shows that the plaintiff did not raise this claim clearly before the court and is raising it for the first time on appeal, we decline to review it on appeal.

Alternatively, the plaintiff asks this court to review his unpreserved claim under the plain error doctrine pursuant to Practice Book § 60-5.[11] "[Section] 60-5 provides in relevant part that [t]he court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court." (Internal quotation marks omitted.) Id., 28.

"As our Supreme Court has explained: [T]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy. . . . In addition, the plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . ." (Internal quotation marks omitted.) *Norwich* v. *Norwich Harborview Corp.*, 156 Conn. App. 45, 50, 111 A.3d 956 (2015).

This court "clarified the two step framework under which we review claims of plain error. First, we must determine whether the trial court in fact committed an error and, if it did, whether that error was indeed plain in the sense that it is patent [or] readily discernable on the face of a factually adequate record, [and] also . . . obvious in the sense of not debatable. . . . We made clear . . . that this inquiry entails a relatively high standard, under which it is not enough for the [party] simply to demonstrate that his position is correct. Rather, the party seeking plain error review must demonstrate that the claimed impropriety was so clear, obvious and indisputable as to warrant the extraordinary remedy of reversal." (Internal quotation marks omitted.) Id., 50–51. "In addition, although a clear and obvious mistake on the part of the trial court is a prerequisite for reversal under the plain error doctrine, such a finding is not, without more, sufficient to warrant the application of the doctrine. Because [a] party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice . . . under the second prong of the analysis we must determine whether the consequences of the error are so grievous as to be fundamentally unfair or manifestly unjust. . . . Only if both prongs of the analysis are satisfied can the appealing party obtain relief." (Internal quotation marks omit-

ted.) *DeChellis* v. *DeChellis*, 190 Conn. App. 853, 866, 213 A.3d 1, cert. denied, 333 Conn. 913, 215 A.3d 1210 (2019).

The plaintiff claims that the circumstances of his case are extraordinary because the court and the defendant have overlooked controlling case law. Beyond that bald assertion, the plaintiff has provided little to no analysis of this unpreserved claim under the plain error doctrine. Because the plaintiff has cursorily addressed the argument that plain error exists with respect to the briefed error, we conclude that he has failed to demonstrate that there was an error "so clear, obvious and indisputable as to warrant the extraordinary remedy of reversal." *Norwich* v. *Norwich Harborview Corp.*, supra, 156 Conn. App. 51.

## II

The plaintiff next claims that the court erred in considering the defendant's special defense that he had failed to exhaust his administrative remedies because the defendant had waived that special defense by failing to raise it in her first motion to dismiss filed on March 24, 2015, her second motion to dismiss filed on October 16, 2018, or her motion for summary judgment filed on April 15, 2019. The defendant, however, contends that the defense is not waived because there is no indication in the record that she ever expressly waived the special defense, and there is no basis in the record on which an "intentional waiver may reasonably be inferred." We conclude that the defendant did not waive the special defense of exhaustion of administrative remedies.

The following additional facts are relevant to the resolution of this claim. During the evidentiary hearing, the plaintiff argued before the court that the defendant was raising the exhaustion issue despite the pleadings being closed and that the defendant had failed to challenge whether the plaintiff had exhausted his administrative remedies before the "eleventh hour." He also claimed that the defendant had ample opportunity during the five or six years that the case had been ongoing to raise the issue of exhaustion. In response to the plaintiff's claim that the defendant had ample opportunity, the court agreed with the plaintiff that it should "probably should have been addressed earlier," but asserted that the defendant had not received the plaintiff's exhibits until three days before the trial. The court then further considered the defendant's exhaustion special defense, ultimately determining that the plaintiff had failed to exhaust his administrative remedies.[12]

The United States Supreme Court has established that exhaustion under the PLRA is an affirmative defense. See *Jones* v. *Bock*, 549 U.S. 199, 211–16, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007). Additionally, Practice Book § 10-6 provides that the order of pleadings should be as follows: "(1) The plaintiff's complaint. (2) The

defendant's motion to dismiss the complaint. (3) The defendant's request to revise the complaint. (4) The defendant's motion to strike the complaint. (5) The defendant's answer (including any special defenses) to the complaint. . . . (8) The plaintiff's reply to any special defenses." Although the plaintiff claims that the defendant waived her right to raise the special defense of exhaustion by not raising it in her motions to dismiss, § 10-6 suggests otherwise. By its terms, § 10-6 expressly permits the filing of special defenses after the filing of a motion to dismiss. Thus, the defendant was not required to raise her special defenses in her pretrial motions to dismiss, as the plaintiff claims.[13]

Moreover, the defendant was not *required* to raise her exhaustion defense in the summary judgment motion because, as noted previously in this opinion, the defense of exhaustion under the PLRA is an affirmative defense, and a defendant is permitted to plead her affirmative defenses in her answer. See Practice Book § 10-50. Furthermore, the plaintiff was not required to factually plead in his complaint that he had exhausted his administrative remedies. See *Jones* v. *Bock*, supra, 549 U.S. 216 ("failure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints"). As such, according to the defendant, it was not until the plaintiff had provided her with a list of exhibits on December 10, 2019, three days before trial was slated to begin, that it was confirmed that the plaintiff had not exhausted his administrative remedies for his retaliation claim. Accordingly, the plaintiff's second claim fails.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The plaintiff was also self-represented during the proceedings before the trial court.

[2] The plaintiff also brought this action against James Dzurenda, the former Commissioner of Correction, in his individual and official capacities, and Paolo Santilli, a treatment officer with the department. The count against Santilli was dismissed on August 31, 2016, along with another count against Hakins. The counts against Dzurenda were dismissed on August 31, 2016, and February 4, 2019, leaving Hakins as the sole remaining defendant. In this opinion, we refer to Hakins as the defendant and to Dzurenda, Santilli and Hakins collectively as the defendants.

[3] In count one of the complaint, the plaintiff alleged that Dzurenda denied him access to the court by failing to provide him with access to the typewriter in order for him to file the required legal documents with the courts. In count two of the complaint, the plaintiff alleged that Hakins denied him access to the courts by failing to provide him with adequate access to a typewriter despite several requests. Count three of the complaint alleged that Santilli had denied him access to the courts by failing to provide him with adequate access to a typewriter. The fifth count of the complaint alleged that Dzurenda violated his constitutional rights by implementing an unreasonable policy and procedure at Garner that all inmates had to be subjected to a strip search after each time that they used the typewriter at Garner because the typewriter could be used only in the visiting area per Garner's policies and procedures. These counts are not germane to the issues raised on appeal, because the plaintiff only challenges the court's disposition of count four.

[4] Title 42 of the United States Code, § 1997e (a), provides in relevant part that "[n]o action shall be brought with respect to prison conditions under

section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.''

[5] We note that administrative directive 9.6 was superseded on April 30, 2021. All references to administrative directive 9.6 herein are to the directive in effect as of August 15, 2013.

[6] As we stated previously in this opinion, the trial court, nevertheless, dismissed those counts of the complaint pertaining to access to the courts and unreasonable search claims for lack of standing and for mootness.

[7] On March 6, 2020, the plaintiff filed a motion for articulation, in response to which the court issued an articulation on May 1, 2020.

[8] The plaintiff's full May 13, 2014 grievance stated: "This grievance is being filed for failure of the counselor, [the treatment officer] and the staff of the [d]epartment . . . to provide me with adequate use of a typewriter necessary to prepare legal documents to be filed with the court, which constitutes [a] denial of access to the courts in violation of the first amendment to the constitution of the United States. I was transferred from Corrigan [Radgowski Correctional Center] to Garner and upon my arrival I requested use of the typewriter and was told by the unit counselor and [the treatment officer] that there is a [ten] day wait policy to use the typewriter. Court documents are time sensitive and [ten] days would not be adequate enough time to provide me with access to a typewriter. Other level [four] facilities offer inmates [the use of] the typewriter at least one hour a day during their recreational periods. I have [a] document which has to be filed with the courts which require [that] they be . . . [typewritten]. I was also subjected to an unreasonable search.

"Resolution: I request that I be given access to the typewriter [five] days per week for an hour during my recreation period which would under the circumstances be considered adequate access and would provide me with access to the court and not be subjected to unreasonable searches after using the typewriter." (Internal quotation marks omitted.)

[9] Because the court and the defendant insinuated during the evidentiary hearing that a failure to exhaust administrative remedies potentially implicated the court's subject matter jurisdiction, we take the opportunity to clarify whether the exhaustion requirement under the PLRA, 42 U.S.C. § 1997e (a), is jurisdictional, not only to provide guidance to the parties, but also to the trial courts, even though we recognize that the following discussion is not necessary in order to determine the proper outcome of the present case. Generally, "[i]t is a settled principle of administrative law that if an adequate administrative remedy exists, it must be exhausted before the Superior Court will obtain jurisdiction to act in the matter." (Internal quotation marks omitted.) *Graham* v. *Friedlander*, 334 Conn. 564, 576, 223 A.3d 796 (2020).

For cases involving the PLRA, however, "[i]n *Richardson* v. *Goord*, [347 F.3d 431 (2d Cir. 2003)], the United States Court of Appeals for the Second Circuit agreed to follow the holding of its sister circuit courts of appeal[s] that have ruled on the question of whether the exhaustion requirement of 42 U.S.C. § 1997e (a) controls subject matter jurisdiction. Those courts have concluded that the language of the statute simply governs the timing of the action and does not contain the type of sweeping and direct language that would indicate a jurisdictional bar rather than a mere codification of administrative exhaustion requirements. . . . [A]n administrative claim is not essential to a case or controversy, and 28 U.S.C. §§ 1331, 1343 supply [subject matter] jurisdiction. Section 1997e (a) does not affect the jurisdiction established by those statutes. . . . In the federal courts, a case in which a prisoner fails to exhaust the available administrative remedies may be dismissed for failure to exhaust administrative remedies under 42 U.S.C. § 1997e (a), but not for lack of subject matter jurisdiction on that basis. . . . The provision does not defeat [federal court jurisdiction], it merely defers it." (Citations omitted; internal quotation marks omitted.) *Mercer* v. *Rodriquez*, 83 Conn. App. 251, 265–66, 849 A.2d 886 (2004).

The plaintiff in the present case brought this action seeking relief under 42 U.S.C. § 1983. "The United States Supreme Court has asserted that [f]ederal law is enforceable in state courts . . . because the [United States] [c]onstitution and laws passed pursuant to it are as much laws in the [s]tates as laws passed by the state legislature. . . . State courts have concurrent jurisdiction over claims brought under § 1983." (Internal quotation marks omitted.) *Sullins* v. *Rodriguez*, 281 Conn. 128, 133, 913 A.2d 415 (2007). Thus, the court had subject matter jurisdiction over the plaintiff's § 1983 claim and a failure to exhaust administrative remedies did not implicate the court's subject matter jurisdiction. See *Mercer* v. *Rodriquez*, supra, 83 Conn. App. 265–67.

There was no procedural error, however, because the court only dismissed

the case after holding an evidentiary hearing and after finding that the plaintiff had failed to exhaust his administrative remedies. Because the failure to exhaust administrative remedies is a requirement to succeed, even if not jurisdictional, the court's dismissal after a hearing where the factual findings supported its conclusion that the plaintiff failed to exhaust was proper.

We also note that, although our Supreme Court in *Mangiafico* v. *Farmington*, 331 Conn. 404, 408, 204 A.3d 1138 (2019), held that a "plaintiff is not required to exhaust administrative remedies prior to filing a § 1983 claim in state court, regardless of the type of relief sought," *Mangiafico* is inapplicable to the present case because the plaintiff is a prisoner who is confined in a correctional facility or prison and brought a § 1983 claim concerning prison conditions. Therefore, he must exhaust his administrative remedies pursuant to the PLRA. See footnote 4 of this opinion.

[10] Administrative directive 9.6 § (6) (L) is not implicated in this case.

[11] Although the plaintiff asks for plain error review under "General Statutes § 60-5" in his appellate brief, we assume that he intended to seek review of his unpreserved claims under Practice Book § 60-5, not General Statutes § 60-5.

[12] We note that, although the plaintiff did not specifically state before the trial court that the defendant's "special defense was waived," we believe that this claim was sufficiently raised before the court when he argued that (1) he believed that the pleadings were closed, (2) the defendant had ample opportunity to raise the exhaustion claim during the five or six years that the case was ongoing, and (3) it was the defendant's responsibility to establish exhaustion, or lack thereof, and that she had failed to challenge it before the "eleventh hour."

[13] The plaintiff also claims in his appellate brief, as he did before the trial court, that he was not provided with sufficient notice of the defendant's exhaustion special defense in order to "rebut her claim," because she filed the motion for order raising the exhaustion issue on the eve of trial. In addressing the plaintiff's claim of insufficient notice, the court found that the plaintiff had been on notice of the defendant's failure to exhaust contention when she included it in her answer as a special defense, which was filed on October 28, 2019.

The record shows that the defendant filed her answer and special defenses on October 28, 2019, and not on the eve of trial as the plaintiff contends. The plaintiff's claim on appeal that he was without notice of the defendant's exhaustion claim and, consequently, could not prepare, is without merit. The defendant pleaded the exhaustion defense in her answer more than forty days before she filed the motion for order.

———————————————————