******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ENRICO MANGIAFICO *v.* TOWN OF
FARMINGTON ET AL.
(SC 19993)

Robinson, C. J., and Palmer, McDonald, D'Auria,
Mullins, Kahn and Ecker, Js.

*Syllabus*

Pursuant to federal statute (42 U.S.C. § 1983), every person who, under
color of any statute, ordinance or regulation of any state, subjects
another person to the deprivation of constitutional rights, shall be liable
to the injured party in an action at law or suit in equity.

The plaintiff landowner, M, sought, inter alia, injunctive relief and to recover
damages under 42 U.S.C. § 1983 from the named defendant, the town
of Farmington, among other defendants, alleging that the town's designa-
tion of M's property as blighted, its assessment of daily punitive fines,
and its imposition of liens on his property constituted a taking in violation
of the federal and state constitutions. After the town had received com-
plaints regarding the appearance of M's property, the town council voted
to place it on the town's blighted building list. Thereafter, when M failed
to make certain improvements, the town began assessing daily punitive
fines for the alleged violation of the town's blight ordinance and com-
menced an action to recover those fines. M neither paid the fines nor
filed an administrative appeal challenging them. As a result, the town
manager caused two liens to be placed on M's property and to be
recorded in the town's land records. After M commenced the present
action, the defendants filed a motion to dismiss for lack of subject
matter jurisdiction. The trial court granted in part the motion and dis-
missed most of M's claims, including his § 1983 claims, on the ground
that he had failed to exhaust the administrative remedies provided by
statute (§ 7-152c [g]) by failing to file an appeal with the Superior Court
challenging the assessment of the fines. Subsequently, the trial court
granted the defendants' motion for summary judgment as to M's
remaining claim and rendered judgment for the defendants, from which
M appealed to the Appellate Court. That court affirmed the judgment
of the trial court, concluding, inter alia, that M's failure to exhaust
his administrative remedies deprived the trial court of subject matter
jurisdiction over M's § 1983 claims. On the granting of certification, M
appealed to this court. *Held*:

1. The Appellate Court improperly upheld the trial court's dismissal of M's
§ 1983 claims for lack of subject matter jurisdiction on the ground that
M was required but failed to file an appeal challenging the assessment
of the fines in accordance with § 7-152 (g) prior to bringing his § 1983
claims, as M was not required to exhaust his available state administra-
tive remedies before filing a claim under 42 U.S.C. § 1983 in state court:
although state courts have concurrent jurisdiction over claims brought
under 42 U.S.C. § 1983, state courts are bound by federal precedent
governing the construction and application of that federal statute, the
United States Supreme Court previously held in *Patsy* v. *Board of
Regents* (457 U.S. 496) that, in light of the legislative purpose and history
of the law, exhaustion of state administrative remedies generally is not
a prerequisite to bringing an action under 42 U.S.C. § 1983, and none
of the federal exceptions to that general rule of nonexhaustion applied
in the present case; moreover, this court concluded that its prior holdings
in *Laurel Park, Inc.* v. *Pac* (194 Conn. 677) and *Pet* v. *Dept. of Health
Services* (207 Conn. 346), which created an additional, unwarranted
exception to that general rule by requiring the exhaustion of state admin-
istrative remedies prior to the filing of a § 1983 action seeking injunctive
relief, were inconsistent with *Patsy* and its progeny, and must be over-
ruled, as those cases incorrectly treated a plaintiff's burden of alleging
and proving the lack of an adequate legal remedy in a § 1983 action for
injunctive relief as a prerequisite to the exercise of a court's subject
matter jurisdiction rather than as an essential element of the plaintiff's
claim for injunctive relief, and, accordingly, a plaintiff's failure to allege
or establish the lack of an adequate remedy does not deprive a court

of subject matter jurisdiction over a § 1983 claim.

2. This court declined to address the merits of the defendants' alternative ground for affirming the Appellate Court's judgment, raised for the first time on appeal to this court, that the plaintiff's takings claims were not ripe for judicial review because there purportedly had not been a final administrative decision as required by *Williamson County Regional Planning Commission* v. *Hamilton Bank* (473 U.S. 172): although this court, in *Port Clinton Associates* v. *Board of Selectman* (217 Conn. 588), previously has treated the *Williamson County* finality requirement as jurisdictional in nature, recent developments in federal case law established that it is a prudential rather than a jurisdictional requirement, and, therefore, this court abandoned its conclusion in *Port Clinton Associates* that the *Williamson County* finality requirement is a jurisdictional defect that may be raised for the first time on appeal; accordingly, because the defendants did not raise their ripeness claim in the trial court, and because the purported lack of a final administrative decision did not implicate the subject matter jurisdiction of the court, that claim was not preserved for appellate review.

Argued October 9, 2018—officially released April 16, 2019

*Procedural History*

Action seeking to enjoin the named defendant from enforcing a blight ordinance, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the court, *Scholl, J.*, granted in part the defendants' motion to dismiss; thereafter, the court, *Scholl, J.*, granted the defendants' motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed to the Appellate Court, *Alvord, Keller* and *Beach, Js.*, which affirmed the judgment of the trial court, and the plaintiff, on the granting of certification, appealed to this court. *Reversed in part*; *further proceedings*.

*Jon L. Schoenhorn*, for the appellant (plaintiff).

*Kenneth R. Slater, Jr.*, with whom was *Daniel J. Krisch*, for the appellees (defendants).

*Opinion*

ECKER, J. The principal issue in this certified appeal is whether a claim brought in state court alleging a deprivation of civil rights under 42 U.S.C. § 1983[1] may be dismissed for failure to exhaust state administrative remedies. The plaintiff, Enrico Mangiafico, is a homeowner who was the subject of a series of enforcement actions under a municipal blight ordinance in the town of Farmington.[2] In 2013, the plaintiff commenced this state court action alleging, in relevant part, that the defendants' designation of his property as blighted, their assessment of daily punitive fines, and their imposition of municipal blight liens constituted an unconstitutional taking of his property in violation of the fourteenth amendment to the United States constitution and § 1983. The defendants successfully moved in the trial court to dismiss the plaintiff's § 1983 claims for lack of subject matter jurisdiction on the ground that the plaintiff had failed to exhaust his administrative remedies because he had not filed an appeal pursuant to General Statutes § 7-152c (g).[3] The Appellate Court affirmed the trial court's judgment. See *Mangiafico* v. *Farmington*, 173 Conn. App. 158, 177, 163 A.3d 689 (2017).

On appeal, the plaintiff contends that he was not required to exhaust his state administrative remedies. The defendants respond that the plaintiff's § 1983 claims properly were dismissed, under settled Connecticut precedent, for failure to exhaust state administrative remedies. Alternatively, the defendants contend that dismissal was required under the ripeness doctrine articulated by the United States Supreme Court in *Williamson County Regional Planning Commission* v. *Hamilton Bank*, 473 U.S. 172, 105 S. Ct. 3108, 87 L. Ed. 2d 126 (1985) (*Williamson County*), because there was no final decision in this case due to the plaintiff's failure to appeal his assessments pursuant to § 7-152c (g).

Our disposition is controlled largely by *Patsy* v. *Board of Regents*, 457 U.S. 496, 501, 102 S. Ct. 2557, 73 L. Ed. 2d 172 (1982), in which the United States Supreme Court held in unequivocal terms that "exhaustion of state administrative remedies is not a prerequisite to an action under § 1983 . . . ." We repeatedly have acknowledged that the *Patsy* doctrine applies in § 1983 cases litigated in our state courts. See *Laurel Park, Inc.* v. *Pac*, 194 Conn. 677, 690, 485 A.2d 1272 (1984); *Fetterman* v. *University of Connecticut*, 192 Conn. 539, 549, 473 A.2d 1176 (1984). We have deviated from *Patsy* in one respect, by creating an exception to its applicability in actions for injunctive relief under § 1983. See *Pet* v. *Dept. of Health Services*, 207 Conn. 346, 369, 542 A.2d 672 (1988) (holding that "no form of injunctive relief, under § 1983 or otherwise, is justified as an exception to the [administrative] exhaustion requirement"); *Laurel Park, Inc.* v. *Pac*, supra, 691 (holding that "none of the

concerns expressed in *Patsy*" warrant an "exception to the exhaustion doctrine" in cases for injunctive relief). Following oral argument in the present case, this court sua sponte ordered the parties to submit supplemental briefs addressing the continued viability of the injunctive relief exception in light of *Patsy* and its progeny and whether we should "overrule *Pet* v. *Department of Health Services* in this case?"

We conclude, in light of *Patsy* and its progeny, that a plaintiff is not required to exhaust administrative remedies prior to filing a § 1983 claim in state court, regardless of the type of relief sought. We therefore overrule our holdings in *Pet* and *Laurel Park, Inc.*, that exhaustion of state administrative remedies is a jurisdictional prerequisite to the filing of a § 1983 action for injunctive relief. We decline to address the defendants' unpreserved *Williamson County* defense and, accordingly, reverse in part the judgment of the Appellate Court.

I

It will be useful at the outset to review the statutory and regulatory scheme governing blight designations and citations in the town of Farmington. General Statutes § 7-148 (c) (7) (H) (xv) provides municipalities with the power to "[m]ake and enforce regulations for the prevention and remediation of housing blight . . . provided such regulations define housing blight and require such municipality to give written notice of any violation to the owner and occupant of the property and provide a reasonable opportunity for the owner and occupant to remediate the blighted conditions prior to any enforcement action being taken . . . ." The statute further provides municipalities with the authority to "prescribe civil penalties for the violation of such regulations of not less than ten or more than one hundred dollars for each day that a violation continues and, if such civil penalties are prescribed, such municipality shall adopt a citation hearing procedure in accordance with section 7-152c . . . ." General Statutes § 7-148 (c) (7) (H) (xv).

Pursuant to § 7-148 (c) (7) (H) (xv), the town adopted regulations governing "blighted premises," which are defined, in relevant part, as "[a]ny vacant building or structure" that (A) "pose[s] a serious threat to the health and safety of persons in the [t]own," (B) "is not being maintained and contributes to housing decay," (C) "[is a location at which] [i]llegal activities are conducted . . . as documented in [p]olice [d]epartment records," (D) "is a fire hazard as determined by the [f]ire [m]arshall or as documented in [f]ire [d]epartment records," or (E) "is a factor creating a substantial and unreasonable interference with the use and enjoyment of other premises within the surrounding area as documented by neighborhood complaints, police reports or the cancellation of insurance on proximate properties." Farmington Town Code § 88-2 (A) through (E) (2003) (town

code). The regulations provide that "[n]o owner of real property, taxable or tax-exempt, within the [t]own of Farmington shall cause or allow blighted premises to be created, nor shall any owner allow the continued existence of blighted premises." Id., § 88-3. Under the regulations, the town manager must "complete a list of blighted properties," which is then "approve[d], disapprove[d], or modif[ied]" by the town council. Id., § 88-4 (B) and (C). After the list of blighted properties has been approved by the town council, "the [t]own [m]anager, or his designee, shall undertake regular inspections for the purpose of documenting continuous blight and shall issue a citation and impose a penalty of not more than $100 for each day that the building or structure" continues to be blighted. Id., § 88-5 (A). Each day that the building or structure is deemed to be blighted constitutes "a separate offense." Id.

Section 7-152c (a) authorizes municipalities to "establish by ordinance a citation hearing procedure" to enforce any "assessments and judgments" imposed in the exercise of its municipal powers. Under the citation hearing procedure, the municipality must, "within twelve months from the expiration of the final period for the uncontested payment of fines, penalties, costs or fees . . . send notice to the person cited," informing them "(1) [o]f the allegations against him and the amount of the fines, penalties, costs or fees due; (2) that he may contest his liability before a citation hearing officer by delivering in person or by mail written notice within ten days of the date thereof; (3) that if he does not demand such a hearing, an assessment and judgment shall be entered against him; and (4) that such judgment may issue without further notice." General Statutes § 7-152c (c). The municipality must provide any person requesting a citation hearing with "written notice of the date, time and place for the hearing" and an opportunity to "present evidence in his behalf." General Statutes § 7-152c (e). At the conclusion of the hearing, the hearing officer must "announce his decision . . . ." General Statutes § 7-152c (e). If the hearing officer "determines that the person is not liable" for the violation, he must dismiss the matter. General Statutes § 7-152c (e). If, however, the hearing officer "determines that the person is liable for the violation," he must "enter and assess the fines, penalties, costs or fees against such person as provided by the applicable ordinances of the municipality." General Statutes § 7-152c (e).

A person subject to an assessment of fines under § 7-152c "is entitled to judicial review by way of appeal." General Statutes § 7-152c (g). The appeal must be "instituted within thirty days of the mailing of notice of such assessment by filing a petition to reopen assessment, together with an entry fee . . . which shall entitle such person to a hearing in accordance with the rules of the judges of the Superior Court." General Statutes § 7-152c

(g). Under the rules of the Superior Court, the hearing on the petition to reopen "shall be de novo," and "[t]here shall be no right to a hearing before a jury." Practice Book § 23-51 (c). Any assessment of fines that is not overturned on appeal or paid in full "shall constitute a lien upon the real estate against which the penalty was imposed from the date of such penalty. Each such lien may be continued, recorded and released in the manner provided by the general statutes for continuing, recording and releasing property tax liens." General Statutes § 7-148aa.

## II

The following facts are taken as true for purposes of this appeal. The plaintiff owns a home located at 23 Lakeview Drive in Farmington, which suffered catastrophic damage sometime prior to 2009, causing it to become uninhabitable for a lengthy period of time. The demolition and rebuilding of the home was delayed by the plaintiff's insurance company, resulting in a settlement agreement sometime in August, 2011.

In July, 2012, the defendant Kathleen Eagen, who was the town manager, received complaints about the appearance of the plaintiff's home. Chris Foryan, the town building official, verbally informed the plaintiff of these complaints on July 25, 2012. The plaintiff asked Foryan to schedule a meeting with Eagen as soon as practicable, explaining that he would be away on vacation in early August. A meeting was held on July 27, 2012, but Eagen did not attend.

On August 14, 2012, without prior notice to the plaintiff or an opportunity for him to be heard, the individual defendants—Eagan, Jeffrey Hogan, Nancy Nickerson, Charles Keniston, and C.J. Thomas—convened a town council meeting at which they each voted to place the plaintiff's home on the town's blighted building list. Eight days later, on August 22, 2012, Eagen sent the plaintiff a letter informing him that his home had been placed on the blighted building list and demanding that he undertake certain improvements and construction prior to October 1, 2012. The plaintiff tried to comply with the letter's demands. Nonetheless, on September 4, 2012, without prior notice and more than three weeks before the October 1 deadline, town building officials began imposing daily punitive fines of $100 on the plaintiff based on the alleged blight condition.

On September 14, 2012, the plaintiff sent a letter to the defendants asking them to remove his home from the blighted building list because it did not satisfy the definition of blight in the town code. The defendants declined to remove the plaintiff's property from the list and, instead, began a citation enforcement action to recover the daily punitive fines. The plaintiff requested and was granted a hearing before a municipal hearing officer, at which he challenged the blight designation

and the imposition of daily fines. At the hearing, which was conducted on October 15, 2012, the hearing officer stated that he lacked the authority to rule on the propriety of the blight designation or the procedures used to designate the plaintiff's property as blighted. The hearing officer explained, however, that he had the authority to remit some of the daily punitive fines and to amend the plaintiff's construction schedule. At the conclusion of the hearing, the hearing officer reduced the total amount of fines from $4000 to $2000 and ordered the plaintiff to present a building plan to municipal officials within thirty days.

On January 4, 2013, the town citation officer again began imposing daily punitive fines of $100 for the plaintiff's alleged violation of the blight ordinance. On February 21, 2013, without notice to the plaintiff, a second hearing was held before a municipal hearing officer, resulting in the imposition of $4700 in fines for the time period between January 4 and February 19, 2013. The plaintiff did not have an opportunity to contest his liability because he was not given notice of the hearing.

The plaintiff did not pay the accumulated assessed fines; nor did he file an appeal pursuant to § 7-152c (g). As a result, Eagan, on behalf of the town, caused two municipal real estate liens to be placed on the plaintiff's property and recorded on the town's land records: (1) a lien in the amount of $2000 for nonpayment of the hearing officer's assessment of fines for the period between September 4 and October 15, 2012; and (2) a lien in the amount of $4700 for nonpayment of the hearing officer's assessment of fines for the period between January 4 and February 19, 2013.

### III

The plaintiff commenced this action on September 5, 2013. The complaint contains five counts, respectively alleging that (1) the blight designation, the daily punitive fines, and the liens constituted an "unconstitutional taking of property without compensation and [a] violation of due process of law," in violation of the fourteenth amendment to the United States constitution, article first, §§ 10 and 11 of the Connecticut constitution, and 42 U.S.C. §§ 1983 and 1988, (2) the defendants, by their actions, intentionally caused the plaintiff to endure emotional distress, (3) the town's blight ordinance is "unconstitutional as applied to the plaintiff's property," pursuant to General Statutes § 52-29 and 28 U.S.C. §§ 2201 and 2202, (4) the plaintiff is entitled to a discharge of the municipal blight liens pursuant to § 7-148aa and General Statutes §§ 49-35a through 49-37, and (5) indemnification from the town for the money damages owed to the plaintiff by the individually named defendants, pursuant to General Statutes §§ 7-101a and 7-465. The plaintiff sought injunctive and declaratory relief, as well as monetary damages. More specifically, he requested (1) an injunction prohibiting the defen-

dants from enforcing the blight ordinance and imposing the daily punitive fines, (2) a declaration that the town's blight ordinance is "unconstitutionally vague and arbitrary as applied to the plaintiff" and that the enforcement of the ordinance has violated the plaintiff's right to due process of law, (3) reasonable attorney's fees, (4) discharge of the municipal blight liens, and (5) compensatory and punitive damages.

The defendants moved to dismiss the plaintiff's complaint for lack of subject matter jurisdiction. The motion was premised on the straightforward legal theory that the plaintiff had failed to exhaust the administrative remedy provided by § 7-152c (g) because he had not filed an appeal with the Superior Court challenging the hearing officer's citation assessments. The trial court granted in part the motion to dismiss on the ground that there was "no dispute that the plaintiff did not file an appeal [with] the Superior Court from any of the decisions of the town or its hearing officer," and such an appeal "would have provided the plaintiff with a de novo hearing in which he could have contested the imposition of the fines as well as the designation of his property as blighted." The trial court's dismissal encompassed counts one (constitutional claims under § 1983), two (intentional infliction of emotional distress), three (declaration that town's blight ordinance is unconstitutionally vague as applied to the plaintiff), and five (indemnification) of the plaintiff's complaint for lack of subject matter jurisdiction. The trial court denied the defendants' motion with respect to count four (discharge of the municipal blight liens), however, on the ground that the exhaustion doctrine did not apply to that particular claim because § 7-148aa "gives the court subject matter jurisdiction" to "release antiblight liens in the same manner that property tax liens are released."

The plaintiff moved for reconsideration on the theory that exhaustion would have been futile "because of the ongoing and prospective nature of the daily $100 punitive fines," which continued to accrue unabated each day. Specifically, the plaintiff argued that "requiring [him] to engage in a protracted process whereby he would have to appeal each and every daily punitive fine imposed or to be imposed—past or future—in order to exhaust administrative remedies and obtain judicial review is a futility which is barred by federal legal precedent." The trial court granted the plaintiff's motion for reconsideration but denied the relief requested therein.

On December 11, 2014, the plaintiff filed a second motion for reconsideration, arguing that the trial court "should reconsider its ruling on the plaintiff's futility argument" in light of the defendants' position "in a new action involving blight citations issued . . . *after* the commencement of the current action . . . ." (Empha-

sis in original.) The plaintiff explained that he had commenced a second action challenging "258 blight citations on his 23 Lakeview Drive, Farmington property, totaling $25,800 in fines, issued between September, 2013 through May, 2014 . . . ." The town had moved to dismiss the plaintiff's second action as premature because it had not commenced, and might not ever commence, a citation assessment action under § 7-152c to collect the fines imposed.[4] The plaintiff argued that the town's position in the second action was contrary to its position in the present action that § 7-152c (g) provided the plaintiff with an adequate administrative remedy and was "proof that any further efforts made by the plaintiff to exhaust administrative remedies [in connection with the conduct at issue in the present lawsuit] would be, and is, both futile and/or 'useless.' " The defendants opposed the plaintiff's motion for reconsideration on the theory that the second action was in a different procedural posture than the present action, and, therefore, the town's legal arguments in the two actions were neither contrary nor inconsistent. The trial court agreed with the defendants and denied the plaintiff's second motion for reconsideration.

In the meantime, on October 1, 2014, the defendants moved for summary judgment on count four of the plaintiff's complaint on the ground that the blight assessments underlying the municipal liens were indisputably "valid and final and subject to no further challenge on the merits . . . ." The trial court granted the motion because the plaintiff had failed to file an appeal from the assessments underlying the liens in the Superior Court pursuant to § 7-152c (g), and, "[i]n the absence of [such] an appeal, the town's decisions are final and not reviewable." With all counts having been decided as a matter of law, the trial court rendered judgment in favor of the defendants.

The plaintiff appealed to the Appellate Court, without success. See *Mangiafico* v. *Farmington*, supra, 173 Conn. App. 177. The Appellate Court rejected the plaintiff's argument that the administrative exhaustion doctrine does not apply to federal claims brought pursuant to § 1983 and his alternative argument that exhaustion would have been futile. See id., 171–72. It held, to the contrary, that the plaintiff was required to exhaust his administrative remedies under § 7-152c (g) and § 91-2 (G) of the town code because "[t]he Superior Court, being a court of general jurisdiction . . . could have addressed all of the plaintiff's claims and provided adequate relief if the plaintiff prevailed." Id., 172. With respect to count four of the plaintiff's complaint, seeking discharge of the municipal blight liens, the Appellate Court held that "the plaintiff could not attack the validity of the assessments secured by the liens because those assessments were final, and therefore valid, and there was no dispute that the liens were in proper form and duly recorded." Id., 175. We granted the plaintiff's

petition for certification to appeal limited to the issue of whether "the Appellate Court properly conclude[d] that the trial court lacked subject matter jurisdiction to entertain the plaintiff's federal civil rights complaint due to the plaintiff's failure to exhaust administrative remedies?"[5] *Mangiafico* v. *Farmington*, 327 Conn. 920, 170 A.3d 681 (2017).

## IV

We first address the plaintiff's claim that he was not required to exhaust his state administrative remedies prior to bringing a § 1983 action. The plaintiff contends that exhaustion is not a prerequisite to an action for damages or equitable relief under § 1983 and, alternatively, that exhaustion would have been futile because the town's citation appeals process did not permit him to challenge either the inclusion of his property on the blighted buildings list, the unconstitutional vagueness of the blight ordinance as applied to his property, or the defendants' failure to follow the proper statutory and regulatory procedures. The defendants respond that the plaintiff's federal civil rights claims properly were dismissed for lack of subject matter jurisdiction because "[i]t is well established that the doctrine of exhaustion of remedies applies even if a plaintiff asserts constitutional violations." We agree with the plaintiff that he was not required to exhaust his state administrative remedies before filing his § 1983 claims in state court.

"As a preliminary matter, we set forth the applicable standard of review. The standard of review of a motion to dismiss is . . . well established. In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . Because the exhaustion [of administrative remedies] doctrine implicates subject matter jurisdiction, [the court] must decide as a threshold matter whether that doctrine requires dismissal of the [plaintiff's] claim. . . . [B]ecause [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary." (Internal quotation marks omitted.) *Neiman* v. *Yale University*, 270 Conn. 244, 250–51, 851 A.2d 1165 (2004).

Section 1983, aptly called the "workhorse of civil rights litigation"; *Morgan* v. *District of Columbia*, 824 F.2d 1049, 1056 (D.C. Cir. 1987); provides "every person" with a procedural vehicle to obtain redress against state and municipal actors whose conduct has deprived that person "of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983 (2012). Section 1983 claims often are filed in federal court, but state courts unques-

tionably "have concurrent jurisdiction over claims brought under § 1983." *Sullins* v. *Rodriguez*, 281 Conn. 128, 133, 913 A.2d 415 (2007). This does not mean, of course, that state courts hearing § 1983 claims are free to depart from United States Supreme Court precedent governing the construction and application of the federal statute. Cf. *Cohens* v. *Virginia*, 19 U.S. (6 Wheat.) 264, 315–23, 5 L. Ed. 257 (1821) (holding that constitutional structure, and supremacy clause in particular, requires that United States Supreme Court have jurisdiction to review judgment of state's high court as to questions of federal law). The elements of a § 1983 action, and the defenses thereto, "are defined by federal law"; (internal quotation marks omitted) *Sullins* v. *Rodriguez*, supra, 134; and state courts applying § 1983 "may not expand or contract the contours" of the right to relief. *Schnabel* v. *Tyler*, 230 Conn. 735, 743, 646 A.2d 152 (1994); see also *Howlett ex rel. Howlett* v. *Rose*, 496 U.S. 356, 376, 110 S. Ct. 2430, 110 L. Ed. 2d 332 (1990) (holding that "a state court entertaining a § 1983 action must adhere to [the federal courts'] interpretation" of § 1983). Accordingly, this court has recognized that it must not "erect a constitutionally impermissible barrier to the vindication of federal rights" in state court. *Sullins* v. *Rodriguez*, supra, 136. We also have acknowledged that "[i]t would be a bizarre result" if this court were to adopt an interpretation of a claim or defense under § 1983 that is different from that of the federal circuit in which our state courts are located, resulting in a different outcome depending on whether the plaintiff filed his § 1983 action in a state courthouse or in a federal courthouse a few blocks away. (Internal quotation marks omitted.) *Schnabel* v. *Tyler*, supra, 743 n.4 (recognizing that decisions of Second Circuit Court of Appeals are "entitled to great weight" in § 1983 cases because "the federal statute confers concurrent jurisdiction on the federal and state courts" [internal quotation marks omitted]). "We do not believe that when Congress enacted the concurrent jurisdiction provision of § 1983 that it intended to create such a disparate treatment of plaintiffs depending on their choice of a federal or state forum." (Internal quotation marks omitted.) Id.

These principles dictate the proper resolution of the present case. As noted previously in this opinion, the United States Supreme Court held more than thirty-five years ago that "exhaustion is not a prerequisite to an action under § 1983 . . . ." *Patsy* v. *Board of Regents*, supra, 457 U.S. 501. The court's holding in *Patsy* is premised on the history and purpose of the Civil Rights Act of 1871 (act), including § 1 of the act, which is the precursor to § 1983. Id., 502–507. Section 1 of the act was intended "to throw open the doors of the United States courts to individuals who were threatened with, or who had suffered, the deprivation of constitutional rights . . . and to provide these individuals immediate

access to the federal courts notwithstanding any provision of state law to the contrary." (Citation omitted; internal quotation marks omitted.) Id., 504. "A major factor motivating the expansion of federal jurisdiction through [§ 1 of the act] was the belief of the 1871 Congress that the state authorities had been unable or unwilling to protect the constitutional rights of individuals or to punish those who violated these rights." Id., 505. "[T]his perceived defect in the [s]tates' [fact-finding] processes" was "particularly relevant" to the exhaustion question because "exhaustion rules are often applied in deference to the superior [fact-finding] ability of the relevant administrative agency." Id., 506. In light of the clear legislative intent to provide an immediate remedy for alleged violations of federal law, the United States Supreme Court "conclude[d] that exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983." Id., 516.

The *Patsy* nonexhaustion rule applies broadly, and with very limited exceptions. The United States Supreme Court has recognized only two instances in which an aggrieved party will be required to exhaust his or her administrative remedies before commencing a § 1983 lawsuit. First, exhaustion may be required by some other federal statute, such as the Prison Litigation Reform Act, 42 U.S.C. § 1997e (a), or the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1415 (*l*), both of which expressly predicate relief on the exhaustion of administrative remedies. See *Patsy* v. *Board of Regents*, supra, 457 U.S. 508 (recognizing that, "[i]n § 1997e, Congress . . . created a specific, limited exhaustion requirement for adult prisoners bringing actions pursuant to § 1983"); *Frazier* v. *Fairhaven School Committee*, 276 F.3d 52, 64 (1st Cir. 2002) (holding that "plaintiffs who bring an IDEA-based claim under 42 U.S.C. § 1983, in which they seek only money damages, must exhaust the administrative process available under the IDEA as a condition precedent to entering a state or federal court"); see generally *Heck* v. *Humphrey*, 512 U.S. 477, 483, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994) (noting that "§ 1983 contains no exhaustion requirement beyond what Congress has provided"). Second, the United States Supreme Court has held that state "taxpayers are barred by the principle of comity from asserting § 1983 actions against the validity of state tax systems in federal courts" without first exhausting their state judicial remedies. *Fair Assessment in Real Estate Assn.*, *Inc.* v. *McNary*, 454 U.S. 100, 116, 102 S. Ct. 177, 70 L. Ed. 2d 271 (1981). Except in these limited contexts, however, "the Supreme Court [and the] circuit courts of appeals have confirmed that, as a general rule, exhaustion of state administrative remedies is not required prior to bringing suit under § 1983."[6] *Talbot* v. *Lucy Corr Nursing Home*, 118 F.3d 215, 218 (4th Cir. 1997).

This court has never questioned the general proposition that *Patsy* applies with full force to § 1983 claims brought in state court. The point was established as a matter of federal law in *Felder* v. *Casey*, 487 U.S. 131, 146–49, 108 S. Ct. 2302, 101 L. Ed. 2d 123 (1988) (applying *Patsy* to hold that plaintiff's failure to comply with Wisconsin's notice of claim requirement could not be used as exhaustion requirement to bar plaintiff from bringing his §1983 claim in state court), and it has been embraced by this court, with the limited deviation discussed subsequently in this opinion, in every instance in which the issue has received attention. See *New England Estates, LLC* v. *Branford*, 294 Conn. 817, 831 n.17, 988 A.2d 229 (2010) (noting that "the requirement that a litigant exhaust state administrative remedies . . . is not a prerequisite to bringing an action [in state court] pursuant to § 1983"); *Fetterman* v. *University of Connecticut*, supra, 192 Conn. 549 (holding that plaintiff is not required to exhaust administrative remedies before filing § 1983 action in state court).

We have, unfortunately, deviated from the *Patsy* nonexhaustion rule in one particular context involving claims under § 1983 seeking *injunctive* relief. As in *Laurel Park, Inc.*, we held in *Pet* that although "exhaustion of state administrative remedies is not a prerequisite to an action for *damages* under § 1983," it is a "standard prerequisite for *injunctive relief*."[7] (Emphasis added; internal quotation marks omitted.) *Pet* v. *Dept. of Health Services*, supra, 207 Conn. 368–69; *Laurel Park, Inc.* v. *Pac*, supra, 194 Conn. 691 (holding that *Patsy* did not abrogate "standard prerequisite" that plaintiff seeking injunctive relief have no adequate remedy at law, and, therefore, plaintiff must exhaust available administrative remedies as "condition precedent" to seeking injunctive relief under §1983); see also *Flanagan* v. *Commission on Human Rights & Opportunities*, 54 Conn. App. 89, 95, 733 A.2d 881 ("When the claim is for injunctive relief . . . our Supreme Court has noted, '[i]n *Laurel Park, Inc.* v. *Pac*, [supra, 691], which included a § 1983 count, that notwithstanding [*Patsy* v. *Board of Regents*], supra, [457 U.S. 516] the fundamental requirement of inadequacy of an available legal remedy in order to obtain injunctive relief remains in full force.' *Pet* v. *Dept. of Health Services*, supra, [368–69].''), cert. denied, 250 Conn. 925, 738 A.2d 656 (1999).

This aspect of our holdings in *Pet* and *Laurel Park, Inc.*, is inconsistent with *Patsy* and its progeny and, therefore, must be overruled.[8] Neither the United States Supreme Court nor the federal circuit courts of appeals have recognized a distinction between claims for damages and injunctive relief for purposes of applying the *Patsy* nonexhaustion rule; the federal circuit courts that have addressed the issue uniformly have concluded that *Patsy* applies regardless of the relief sought. Thus, the

*Patsy* nonexhaustion rule is applicable to "a request for injunctive relief in a § 1983 action" because to hold otherwise "would in effect . . . [deny] the precedential effect of *Patsy*" by "requiring exhaustion before bringing this type of § 1983 action." *James* v. *Richman*, 547 F.3d 214, 218 (3d Cir. 2008); see also *DeSario* v. *Thomas*, 139 F.3d 80, 86 (2d Cir. 1998) (holding that availability of state administrative remedy "does not bar injunctive relief for plaintiffs" in light of *Patsy*), vacated on other grounds sub nom. *Slekis* v. *Thomas*, 525 U.S. 1098, 119 S. Ct. 864, 142 L. Ed. 2d 767 (1999); *Kercado-Melendez* v. *Aponte-Roque*, 829 F.2d 255, 258 (1st Cir. 1987) (holding that plaintiff was not required to exhaust her administrative remedies prior to filing § 1983 action for injunctive relief and monetary damages because, in *Patsy*, United States "Supreme Court . . . held expressly that [§] 1983 claimants need not avail themselves of state judicial and administrative remedies before going to federal court"), cert. denied, 486 U.S. 1044, 108 S. Ct. 2037, 100 L. Ed. 2d 621 (1988); *United Church of the Medical Center* v. *Medical Center Commission*, 689 F.2d 693, 697 (7th Cir. 1982) (holding that trial court improperly dismissed plaintiff's § 1983 action for declaratory and injunctive relief because "*Patsy* is fully dispositive of the exhaustion question").

The injunctive relief exception created in *Pet* and *Laurel Park, Inc.*, arose from an effort to observe the time-honored equitable principle that a party seeking injunctive relief must establish that he has no adequate remedy at law[9] and that irreparable harm will ensue absent injunctive relief. See *Pet* v. *Dept. of Health Services*, supra, 207 Conn. 369 (noting "the fundamental requirement of inadequacy of an available legal remedy in order to obtain injunctive relief"); *Laurel Park, Inc.* v. *Pac*, supra, 194 Conn. 691 ("[t]he inadequacy of an available legal remedy is a standard prerequisite for injunctive relief"); see generally *Hartford* v. *American Arbitration Assn.*, 174 Conn. 472, 476, 391 A.2d 137 (1978) ("A party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law. The allegations and proof are conditions precedent to the granting of an injunction."). In *Pet* and *Laurel Park, Inc.*, we incorrectly treated the existence of an inadequate legal remedy as a prerequisite to the exercise of the court's subject matter jurisdiction, rather than as an essential element of a plaintiff's claim for injunctive relief. See *Murphy* v. *Zoning Commission*, 148 F. Supp. 2d 173, 181–82 (D. Conn. 2001) (observing that "the question of whether a claimant is required to exhaust state administrative remedies is conceptually distinct from the question of whether a party is entitled to injunctive relief after a showing that any legal remedy would be inadequate" because "a § 1983 claimant seeking injunctive relief is [not] required to exhaust state administrative remedies").

Consistent with *Patsy*, we now hold that a § 1983 plaintiff need not exhaust state administrative remedies, regardless of the type of relief sought in the complaint. Although a plaintiff seeking injunctive relief under § 1983 must allege and prove that no adequate remedy at law exists, this burden is not part of the exhaustion requirement but, rather, a part of the plaintiff's burden of pleading and proof.[10] Therefore, a plaintiff's failure to allege or establish the lack of an adequate legal remedy does not deprive the trial court of subject matter jurisdiction over a claim brought pursuant to § 1983.

To summarize, the trial court in the present case granted the defendants' motion to dismiss the plaintiff's § 1983 claims because it concluded that the plaintiff had failed to exhaust his available state administrative remedies. We hold that the plaintiff was not required to exhaust his available state administrative remedies before filing a § 1983 claim in state court.[11] The dismissal of the plaintiff's § 1983 claims for lack of jurisdiction, therefore, must be reversed.[12]

The foregoing discussion also explains why we must reject the defendants' argument that the trial court properly dismissed the plaintiff's § 1983 claims on the ground that "exhaustion of remedies applies even if a plaintiff asserts constitutional violations." The defendants are correct that "[i]t is well established [as a matter of Connecticut law] that a plaintiff may not circumvent the requirement to exhaust available administrative remedies merely by asserting a constitutional claim." *St. Paul Travelers Cos.* v. *Kuehl*, 299 Conn. 800, 813, 12 A.3d 852 (2011). But § 1983 claims are not governed by state law; they are governed by federal law, and, in *Patsy*, the United States Supreme Court eliminated any exhaustion requirement under § 1983 because the purpose of the statute is to provide "immediate access" to the courts for "individuals who were threatened with, or who had suffered, the deprivation of constitutional rights . . . notwithstanding any provision of state law to the contrary." (Citation omitted.) *Patsy* v. *Board of Regents*, supra, 457 U.S. 504; see also *Doe* v. *Pfrommer*, 148 F.3d 73, 78 (2d Cir. 1998) (recognizing that "*Patsy*'s categorical statement that exhaustion is not required and the expansive view of the federal courts in protecting constitutional rights allow plaintiffs to seek relief under § 1983 without first resorting to state administrative procedures"). The plaintiff, accordingly, was not required to exhaust his state administrative remedies prior to filing his § 1983 claims in state court.

V

Lastly, we address the defendants' alternative argument that the plaintiff's claims are not ripe for judicial review under "the finality doctrine established by the

United States Supreme Court in *Williamson County* . . . ." The defendants acknowledge that this finality argument is not the same as the exhaustion argument raised in and decided by the trial court and the Appellate Court. They contend, nonetheless, that this court must address their unpreserved alternative ground for affirmance because it "concerns subject matter jurisdiction," which "must be considered whenever raised." We disagree that the *Williamson County* finality doctrine implicates the court's subject matter jurisdiction, and, therefore, we decline to address the merits of this unpreserved claim.

"This court previously has held that [o]nly in [the] most exceptional circumstances can and will this court consider a claim, constitutional or otherwise, that has not been raised and decided in the trial court. . . . This rule applies equally to [alternative] grounds for affirmance."[13] (Internal quotation marks omitted.) *Perez-Dickson* v. *Bridgeport*, 304 Conn. 483, 498–99, 43 A.3d 69 (2012). A claim that a court lacks subject matter jurisdiction, however, "may be raised at any time during the proceedings," including for the first time on appeal. (Internal quotation marks omitted.) Id., 506. "We have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary." (Internal quotation marks omitted.) *Ajadi* v. *Commissioner of Correction*, 280 Conn. 514, 532, 911 A.2d 712 (2006).

The respondent in *Williamson County* filed a lawsuit in federal court under § 1983, alleging that the application of various government regulations to its property constituted an unconstitutional taking without just compensation in violation of the fifth amendment to the United States constitution. *Williamson County Regional Planning Commission* v. *Hamilton Bank*, supra, 473 U.S. 182. The United States Supreme Court rejected the claim on two related but independent grounds, which have become known as the "finality" and "compensation" prongs of *Williamson County*. Under the finality prong, "a claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." Id., 186. The court observed that the respondent in *Williamson County* could have sought variances to avoid the application of the challenged governmental regulations but failed to do so. Id., 187–91. In light of the respondent's failure to request any variances, the court concluded that the petitioner planning and zoning commission had not "arrived at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question," and the respondent's § 1983 claim therefore was premature.[14] Id., 191.

Under the compensation prong of *Williamson County*, which is distinct from the finality prong, a plaintiff's takings claim is not ripe for review until after the plaintiff has sought just compensation in state court. Id., 194. The court reasoned that "[t]he [f]ifth [a]mendment does not proscribe the taking of property; it proscribes taking without just compensation"; id.; and, therefore, a takings claim is "premature until the property owner has availed itself of the process" for obtaining just compensation. Id., 195. Accordingly, a "property owner has not suffered a violation of the [j]ust [c]ompensation [c]lause until the owner has unsuccessfully attempted to obtain just compensation through the procedures provided by the [s]tate for obtaining such compensation . . . ." Id.

Thus, pursuant to *Williamson County*, a plaintiff's takings claim is not ripe for review until (1) the relevant administrative agency has arrived at a final, definitive decision, and (2) the plaintiff has sought just compensation through the procedures provided by the state.[15] See *Sherman* v. *Chester*, 752 F.3d 554, 561 (2d Cir. 2014) (recognizing that, for takings claim to be ripe under *Williamson County* doctrine, "the plaintiff must show that (1) the state regulatory entity has rendered a final decision on the matter, and (2) the plaintiff has sought just compensation by means of an available state procedure" [internal quotation marks omitted]); *Severance* v. *Patterson*, 566 F.3d 490, 496 (5th Cir. 2009) ("The Supreme Court . . . has adopted a special, two-prong test for evaluating ripeness under the [t]akings [c]lause. . . . A takings claim is not ripe until (1) the relevant governmental unit has reached a final decision as to how the regulation will be applied to the landowner, and (2) the plaintiff has sought compensation for the alleged taking through whatever adequate procedures the state provides." [Citation omitted.]). Although developed in the context of fifth amendment takings jurisprudence, the *Williamson County* ripeness doctrine also "applies to due process claims arising from the same nucleus of facts as a takings claim." *Kurtz* v. *Verizon New York, Inc.*, 758 F.3d 506, 515 (2d Cir. 2014) (citing cases); see also *John Corp.* v. *Houston*, 214 F.3d 573, 584 (5th Cir. 2000) ("Since *Williamson County* was decided, courts have applied these principles to not only substantive due process claims, but also to procedural due process and equal protection claims. In most cases, however, only *Williamson County*'s finality requirement has been applied to claims other than the 'due process takings' claim described in that case.").

The defendants contend that *Williamson County* established jurisdictional requirements in light of the United States Supreme Court's use of jurisdictional terminology ("finality" and "ripeness") to describe the doctrine. Indeed, this court itself has treated the *Williamson County* finality requirement as jurisdictional

in nature.[16] See *Port Clinton Associates* v. *Board of Selectmen*, 217 Conn. 588, 604, 587 A.2d 126, cert. denied, 502 U.S. 814, 112 S. Ct. 64, 116 L. Ed. 2d 39 (1991). In *Port Clinton Associates*, the plaintiff alleged that the denial of permission to expand its marina constituted "an illegal 'taking' under the fifth and fourteenth amendments to the United States constitution, and violations of 42 U.S.C. § 1983 (predicated upon the unconstitutional taking)." Id., 589. The trial court dismissed the plaintiff's § 1983 claim for lack of subject matter jurisdiction because the plaintiff had failed to file an administrative appeal under General Statutes § 8-8. Id., 604–607. We agreed with the plaintiff that "federal law prevent[ed] us from applying the exhaustion doctrine to a § 1983 claim"; id., 599; but affirmed the judgment of the trial court on the alternative jurisdictional ground, under *Williamson County*, that "there can be no regulatory 'taking,' and thus no deprivation of 'private property without just compensation,' until there has been a final administrative decision." Id. Because the plaintiff in that case had failed to present an alternative and less grandiose plan of development to the final decision maker,[17] we held that there was no final decision, and, therefore, "the trial court had no jurisdiction to consider the taking claim . . . ." Id., 609–10.

It has become clear in recent years, long since the issuance of our decision in *Port Clinton Associates*, that the *Williamson County* ripeness doctrine "is not, strictly speaking, jurisdictional." *Horne* v. *Dept. of Agriculture*, 569 U.S. 513, 526, 526 n.6, 133 S. Ct. 2053, 186 L. Ed. 2d 69 (2013) (reasoning that, because "[a] [c]ase or [c]ontroversy exists once the government has taken private property without paying for it . . . [the existence of] an alternative remedy . . . does not affect the jurisdiction of the federal court"); see also *Sherman* v. *Chester*, supra, 752 F.3d 561 ("[b]ecause *Williamson County* is a prudential rather than a jurisdictional rule, we may determine that in some instances, the rule should not apply and we still have the power to decide the case" [internal quotation marks omitted]), quoting *Sansotta* v. *Nags Head*, 724 F.3d 533, 545 (4th Cir. 2013). It therefore follows that a *Williamson County* ripeness defense may be waived if it is not timely raised. See *Stop the Beach Renourishment, Inc.* v. *Florida Dept. of Environmental Protection*, 560 U.S. 702, 729, 130 S. Ct. 2592, 177 L. Ed. 2d 184 (2010) (holding that defendants objection that plaintiffs' takings claim was "unripe because petitioner has not sought just compensation" had been waived because objection did not appear "in the briefs in opposition to the petition for writ of certiorari, and . . . is [not] jurisdictional"); *Suitum* v. *Tahoe Regional Planning Agency*, 520 U.S. 725, 734, 117 S. Ct. 1659, 137 L. Ed. 2d 980 (1997) (addressing "only the 'final decision' prong of *Williamson* [*County*]" because that was only prong "addressed below and briefed before this [c]ourt"); *Rosedale Missionary Bap-*

*tist Church* v. *New Orleans*, 641 F.3d 86, 88–89 (5th Cir. 2011) (noting that United States Supreme Court has "explicitly held that *Williamson County*'s ripeness requirements are merely prudential, not jurisdictional, so although a court may raise them sua sponte, it may consider them waived or forfeited as well" [footnotes omitted]).

In light of this doctrinal development, we must abandon our conclusion in *Port Clinton Associates* that the *Williamson County* ripeness doctrine is a jurisdictional defect that may be raised for the first time on appeal. Because the defendants raised their *Williamson County* defense for the first time in this certified appeal, and because the defense is nonjurisdictional, the viability of that defense is not preserved for appellate review. See, e.g., *State* v. *Darryl W.*, 303 Conn. 353, 371, 33 A.3d 239 (2012) ("[i]t is our long-standing position that [t]o review [a] claim, which has been articulated for the first time on appeal and not before the trial court, would result in a trial by ambuscade of the trial judge" [internal quotation marks omitted]). Accordingly, we decline to address whether there was a final decision by the initial decision maker as required by *Williamson County*.[18]

The judgment of the Appellate Court is reversed with respect to the plaintiff's § 1983 claims and the case is remanded to that court with direction to remand the case to the trial court with direction to deny the defendants' motion to dismiss as to the plaintiff's § 1983 claims and for further proceedings according to law.

In this opinion the other justices concurred.

[1] Title 42 of the United States Code, § 1983, provides a cause of action against "[e]very person who, under color of any statute, ordinance, [or] regulation . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ."

[2] The defendants are the town, Kathleen Eagen, Jeffrey Hogan, Nancy Nickerson, Charles Keniston, and C.J. Thomas. We refer hereinafter to the defendants collectively as the defendants, except when it is necessary to identify a defendant individually by name.

[3] General Statutes § 7-152c (g) provides: "A person against whom an assessment has been entered pursuant to this section is entitled to judicial review by way of appeal. An appeal shall be instituted within thirty days of the mailing of notice of such assessment by filing a petition to reopen assessment, together with an entry fee in an amount equal to the entry fee for a small claims case pursuant to section 52-259, at a superior court facility designated by the Chief Court Administrator, which shall entitle such person to a hearing in accordance with the rules of the judges of the Superior Court."

[4] The trial court in the second action subsequently denied the town's motion to dismiss and rendered judgment in favor of the plaintiff because the town's "position [was] inconsistent with its prior argument" in this case. See *Mangiafico* v. *Farmington*, Superior Court, judicial district of Hartford, Docket No. HHD-CV-14-5038235-S (February 10, 2015) (order denying motion to dismiss). The Appellate Court reversed the judgment of the trial court in the second action, holding that the plaintiff's claims in that case were not ripe for adjudication because the town never had sought to enforce the citations and the time for doing so had expired. See *Mangiafico* v. *Farmington*, 173 Conn. App. 178, 191, 163 A.3d 631 (2017). The Appellate Court's holding in the second action is not at issue in this appeal.

[5] In his principal brief, the plaintiff also claims that the Appellate Court improperly (1) upheld the dismissal of his complaint insofar as it contained a claim for inverse condemnation, and (2) upheld the trial court's grant of summary judgment on count four of his complaint, which sought to discharge

the blight liens. These issues are outside the scope of the certified question, and, therefore, we decline to address them. See, e.g., *State* v. *Cote*, 314 Conn. 570, 581, 107 A.3d 367 (2014) (declining to review claim that "is beyond the scope of the certified question"); see also Practice Book § 84-9 ("[t]he issues which the appellant may present are limited to those set forth in the petition for certification, except where the issues are further limited by the order granting certification").

[6] The defendants argue that there is a third exception to the *Patsy* nonexhaustion doctrine when there are ongoing, coercive state administrative proceedings that implicate important state interests. In support of this argument, the defendants rely on *Ohio Civil Rights Commission* v. *Dayton Christian Schools, Inc.*, 477 U.S. 619, 627 and n.2, 106 S. Ct. 2718, 91 L. Ed. 2d 512 (1986), in which the United States Supreme Court held that the principles of comity underlying the abstention doctrine established in *Younger* v. *Harris*, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971), require federal courts to abstain from exercising jurisdiction over a § 1983 action filed while coercive state administrative proceedings are ongoing. See generally *Sprint Communications, Inc.* v. *Jacobs*, 571 U.S. 69, 78, 134 S. Ct. 584, 187 L. Ed. 2d 505 (2013) (noting that federal courts will abstain from exercising jurisdiction under *Younger* abstention doctrine only in following "exceptional circumstances": [1] "federal intrusion into ongoing state criminal prosecutions"; [2] "certain civil enforcement proceedings"; and [3] "pending civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions" [internal quotation marks omitted]); *Spargo* v. *New York State Commission on Judicial Conduct*, 351 F.3d 65, 75 (2d Cir. 2003) ("*Younger* abstention is mandatory when: [1] there is a pending state proceeding, [2] that implicates an important state interest, and [3] the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of his or her federal constitutional claims"), cert. denied, 541 U.S. 1085, 124 S. Ct. 2812, 159 L. Ed. 2d 247 (2004). The United States Supreme Court noted in *Ohio Civil Rights Commission* that application of the *Younger* abstention doctrine was "fully consistent" with the nonexhaustion principles set forth in *Patsy* because the administrative proceedings at issue in that case were "coercive rather than remedial, began before any substantial advancement in the federal action took place, and involve an important state interest." *Ohio Civil Rights Commission* v. *Dayton Christian Schools, Inc.*, supra, 628 n.2.

*Ohio Civil Rights Commission* did not create a general exception to the *Patsy* nonexhaustion doctrine in § 1983 cases; it simply held that the doctrine was not an impediment to federal abstention under *Younger* when there is an ongoing, coercive state administrative proceeding that implicates important state interests. The defendants in the present case did not seek abstention under the *Younger* doctrine; nor did they claim that a state analogue to the *Younger* abstention doctrine applies. The cases on which they rely, therefore, are inapplicable. See *Brown ex rel. Brown* v. *Day*, 555 F.3d 882, 890 (10th Cir. 2009) (holding that coercive state administrative proceedings are "exempt from *Patsy* and entitled to *Younger* deference"); *Moore* v. *Asheville*, 396 F.3d 385, 395 n.4 (4th Cir.) (noting that "*Younger* requires federal courts to abstain in favor of pending state administrative proceedings that are coercive in nature"), cert. denied, 546 U.S. 819, 126 S. Ct. 349, 163 L. Ed. 2d 59 (2005); *O'Neill* v. *Philadelphia*, 32 F.3d 785, 793 (3d Cir. 1994) (holding that "considerations of comity demand that we remain sensitive to the legitimate interests of the states" and abstain from exercising jurisdiction under *Younger* when there are ongoing, coercive state administrative proceedings), cert. denied, 514 U.S. 1015, 115 S. Ct. 1355, 131 L. Ed. 2d 213 (1995); *University Club* v. *New York*, 842 F.2d 37, 41–42 (2d Cir. 1988) (noting that abstention under *Younger* doctrine is required when there is ongoing, coercive state administrative proceeding implicating important state interests); *Kercado-Melendez* v. *Aponte-Roque*, 829 F.2d 255, 260–61 (1st Cir. 1987) (observing that, "[i]n *Patsy* and cases like it, abstention [under the *Younger* doctrine] was unnecessary" because state administrative proceeding was neither coercive nor ongoing [footnote omitted]), cert. denied, 486 U.S. 1044, 108 S. Ct. 2037, 100 L. Ed. 2d 621 (1988); *Farm Bureau Town & Country Ins. Co.* v. *Angoff*, 909 S.W.2d 348, 355 (Mo. 1995) ("[a]pplying the *Younger* principle, as reiterated in *Ohio Civil Rights Commission*," because "the proceedings are clearly coercive, the administrative action began before the issues were joined in the § 1983 action, and Missouri has an important interest in preventing unfair discrimination by licensed insurance companies"). Our holding in the present case is limited to the administrative exhaustion claim raised and argued by the parties, and

we need not and do not address whether the *Younger* abstention doctrine, or a state analogue thereof, would be applicable under the circumstances of this case.

[7] The plaintiff's complaint in the present case sought both injunctive relief and monetary damages under § 1983. Because "exhaustion of state administrative remedies is not a prerequisite to an action for damages under § 1983"; *Pet* v. *Dept. of Health Services*, supra, 207 Conn. 368; the dismissal of the plaintiff's § 1983 claim for monetary damages plainly was improper.

[8] In overruling our prior precedent, we are mindful of the principle of stare decisis, which "gives stability and continuity to our case law." *Conway* v. *Wilton*, 238 Conn. 653, 658, 680 A.2d 242 (1996). Stare decisis, however, is "not an inexorable command" or an "absolute impediment to change," especially when a prior decision "is clearly wrong." (Internal quotation marks omitted.) Id. 660; see also *State* v. *Miranda*, 274 Conn. 727, 734, 878 A.2d 1118 (2005) ("[i]t is more important that the court should be right upon later and more elaborate consideration of the cases than consistent with previous declarations" [internal quotation marks omitted]), quoting *Barden* v. *Northern Pacific Railroad Co.*, 154 U.S. 288, 322, 14 S. Ct. 1030, 38 L. Ed. 992 (1894). Our conclusion today, moreover, is not a matter of choice, but is compelled by the supremacy clause of the United States constitution. See *Haywood* v. *Drown*, 556 U.S. 729, 740–41, 129 S. Ct. 2108, 173 L. Ed. 2d 920 (2009) (holding that supremacy clause of United States constitution prohibits states from "shut[ting] the courthouse door to federal [§ 1983] claims" by divesting their state courts of jurisdiction).

[9] The required showing of "no adequate remedy at law" typically refers to the availability of alternative relief in the form of monetary damages. See *Register.com, Inc.* v. *Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004) ("[i]f an injury can be appropriately compensated by an award of monetary damages, then an adequate remedy at law exists, and no irreparable injury may be found to justify specific relief").

[10] In *Laurel Park, Inc.*, and *Pet*, we did not view *Patsy* "as having abrogated this fundamental requirement for injunctive relief even in the federal courts." (Internal quotation marks omitted.) *Pet* v. *Dept. of Health Services*, supra, 207 Conn. 369; accord *Laurel Park, Inc.* v. *Pac*, supra, 194 Conn. 691. Although the issue is outside the scope of this certified appeal, we note that subsequent federal case law has cast doubt on this view. See *James* v. *Richman*, supra, 547 F.3d 217–18 (holding that injunctive and declaratory relief are available under § 1983, even if adequate remedy at law exists, because to hold otherwise would "impose a de facto exhaustion requirement" contrary to *Patsy*); *DeSario* v. *Thomas*, supra, 139 F.3d 86 (holding that, in light of *Patsy*, availability of adequate remedy "does not bar injunctive relief for plaintiffs" under § 1983); see also *Romano* v. *Greenstein*, 721 F.3d 373, 376 n.7 (5th Cir. 2013) (rejecting claim that "the [D]istrict [C]ourt lacked subject matter jurisdiction because [the plaintiff] had an adequate remedy at law—judicial review in state court—which precludes her from seeking permanent injunctive relief" because plaintiff "was permitted to bring her § 1983 claim regardless of whether she had exhausted her state judicial remedy").

[11] In light of this conclusion, we need not reach the plaintiff's claim that the exhaustion requirement should be excused under the futility exception; see *Neiman* v. *Yale University*, supra, 270 Conn. 258–59; because an appeal under § 7-152c (g) is inadequate to redress the alleged constitutional violations.

[12] Our holding does not affect the disposition of the plaintiff's state law claims, which are not at issue in this certified appeal.

[13] In the absence of a grant of special permission prior to the filing of the appellee's brief, only "those grounds [that] were raised and briefed in the Appellate Court" may be raised as alternative grounds for affirmance in a certified appeal to this court. See Practice Book § 84-11 (a) ("Upon the granting of certification, the appellee may present for review alternative grounds upon which the judgment may be affirmed provided those grounds were raised and briefed in the Appellate Court. . . . If such alternative grounds for affirmation . . . were not raised in the Appellate Court, the party seeking to raise them in the Supreme Court must move for special permission to do so prior to the filing of that party's brief. Such permission will be granted only in exceptional cases where the interests of justice so require."). The defendants neither requested nor received special permission to raise an alternative ground for affirmance in this certified appeal.

[14] The court in *Williamson County* distinguished between finality and exhaustion, explaining as follows: "The question whether administrative

remedies must be exhausted is conceptually distinct . . . from the question whether an administrative action must be final before it is judicially reviewable. . . . While the policies underlying the two concepts often overlap, the finality requirement is concerned with whether the initial [decision maker] has arrived at a definitive position on the issue that inflicts an actual, concrete injury; the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate. *Patsy* concerned the latter, not the former.

"The difference is best illustrated by comparing the procedure for seeking a variance with the procedures that, under *Patsy*, [the] respondent would not be required to exhaust. While it appears that the [s]tate provides procedures by which an aggrieved property owner may seek a declaratory judgment regarding the validity of zoning and planning actions taken by county authorities . . . [the] respondent would not be required to resort to those procedures before bringing its § 1983 action, because those procedures clearly are remedial. Similarly, [the] respondent would not be required to appeal the [c]ommission's rejection of the preliminary plat to the Board of Zoning Appeals, because the [b]oard was empowered, at most, to review that rejection, not to participate in the Commission's [decision making].

"Resort to those procedures would result in a judgment whether the [c]ommission's actions violated any of [the] respondent's rights. In contrast, resort to the procedure for obtaining variances would result in a conclusive determination by the [c]ommissioner whether it would allow [the] respondent to develop the subdivision in the manner [the] respondent proposed." (Citations omitted.) *Williamson County Regional Planning Commission* v. *Hamilton Bank*, supra, 473 U.S. 192–93.

[15] The compensation prong of the *Williamson County* doctrine currently is under reconsideration by the United States Supreme Court. See *Knick* v. *Scott*, U.S. , 138 S. Ct. 1262, 200 L. Ed. 2d 416 (2018) (granting plaintiff's petition for writ of certiorari limited to issue of whether property owner is required to ripen federal takings claim by seeking just compensation in state court).

[16] Prior to the United States Supreme Court's clarification of the prudential nature of the *Williamson County* ripeness doctrine, many other courts also considered one or both prongs of the doctrine to be jurisdictional. See, e.g., *Kolton* v. *Frerichs*, 869 F.3d 532, 534 (7th Cir. 2017) (reversing prior decisions of United States Court of Appeals for Seventh Circuit as "no longer authoritative to the extent they deem *Williamson County* jurisdictional"); *Rosedale Missionary Baptist Church* v. *New Orleans*, 641 F.3d 86, 88–89 (5th Cir. 2011) (recognizing that *Samaad* v. *Dallas*, 940 F.2d 925, 934 [5th Cir. 1991], in which United States Court of Appeals for Fifth Circuit held that "the ripeness of a takings claim under *Williamson County* is a jurisdictional requirement that cannot be waived or forfeited" is "no longer good law" because "the Supreme Court has since explicitly held that *Williamson County*'s ripeness requirements are merely prudential, not jurisdictional"); see generally *Arrigoni Enterprises, LLC* v. *Durham*, U.S. , 136 S. Ct. 1409, 1411–12, 194 L. Ed. 2d 821 (2016) (Thomas, J., dissenting from the denial of certiorari) (noting that, even though United States Supreme Court has "explained—in no uncertain terms—that" second prong of *Williamson County* doctrine is prudential, rather than jurisdictional, "several [federal circuit] [c]ourts of [a]ppeals continue to treat the *Williamson County* rule as a jurisdictional rule limiting the courts' power to consider federal takings claims").

[17] Consistent with the distinction between finality and exhaustion delineated in *Williamson County*; see footnote 14 of this opinion; we noted that "a property owner need not pursue *remedial* procedures that merely review the propriety of the initial [decision maker's] action." (Emphasis in original.) *Port Clinton Associates* v. *Board of Selectmen*, supra, 217 Conn. 606. Under the regulatory and statutory scheme at issue in *Port Clinton Associates*, the plaintiff "had no [decision maker] other than the board of selectman itself from which it could have obtained a more favorable result" because "an administrative appeal to the *Superior Court*" under § 8-8 provides only remedial "review of the propriety [of] the initial [decision maker's] action," which is "precisely the type of procedure that a claimant under 42 U.S.C. § 1983 need *not* pursue as a prerequisite to filing his suit." (Emphasis in original; internal quotation marks omitted.) Id., 607.

[18] Nothing herein is intended to preclude the defendants from raising a defense based on *Williamson County* in the trial court, and we express no

opinion regarding the merits of any such defense.

―――――――――――――――――